### In re DURANT'S RENTAL CENTER, INC., Debtor.

### DURANT'S RENTAL CENTER, INC., Plaintiff,

### v.

### UNITED TRUCK LEASING, INC., Defendant.

**Bankruptcy No. 5–89–01139.**
**Adv. No. 5–89–0207.**

United States Bankruptcy Court, D. Connecticut.

July 24, 1990.

---

James M. Nugent, Law Offices of Ira B. Charmoy, Bridgeport, Conn., for plaintiff.

Kevin J. Burns, Law Offices of Stanley Cohen, Hartford, Conn., for defendant.

MEMORANDUM AND DECISION ON COMPLAINT TO AVOID PREFERENTIAL TRANSFERS UNDER CODE § 547

ALAN H.W. SHIFF, Bankruptcy Judge.

I.

Having examined the exhibits and assessed the credibility of the witness, I make the following findings of fact and conclusions of law.

On December 20, 1984, the plaintiff and the defendant entered into two agreements under which the plaintiff leased two trucks from the defendant for five years. The lease on truck number 53610 took effect on April 18, 1985, and specified weekly rental of $433.66 and depreciation of $109.89. The lease on truck number 13595 took effect on May 23, 1985, and specified monthly rental of $1,379.17 and weekly depreciation of $111.41. Richard Smith, the plaintiff's controller, testified that the average monthly rental for the two trucks was approximately $3,500.00.

The plaintiff ceased making regular payments on the leases in December, 1988, but did make an unspecified number of partial payments. Paragraph 11C(3) of the leases, *Plaintiff's Exhibit 2,* provides that if the plaintiff defaulted and the default continued "for five days after written notice to [plaintiff], [defendant] may terminate the lease of Vehicles. Upon termination, [defendant] may demand that [plaintiff] purchase immediately any or all of the Vehicles in accordance with Paragraph 11D...." *See infra* note 2. By a letter dated April 20, 1985, *Plaintiff's Exhibit 3,* the defendant served notice of default and alleged that the total arrearage was $13,963.10. Smith testified that the arrearage was approximately $20,000.00 as of June. Both before and after the April 20 notice, the plaintiff made extensive efforts to restructure its obligations under the lease, but the defendant insisted that the plaintiff pay varying amounts of up to $90,000.00. In June, 1989, the parties reached an agreement under which the plaintiff would pay $27,500.00 and return the trucks, in exchange for which the defendant would give the plaintiff a release of all of its obligations under the leases. On June 30, 1989 and August 7, 1989, the plaintiff paid the defendant $24,000.00 and $3,500.00, respectively; on an unspecified date in June or July the plaintiff returned the trucks; and on August 2, the defendant gave the plaintiff the release. *Defendant's Exhibit A.*

On September 20, 1989, the plaintiff filed a petition under chapter 11 of the Bankruptcy Code. On October 3, 1989, the plaintiff commenced the instant adversary proceeding under § 547, seeking to avoid as preferential the June 30 and August 7 payments. In response, the defendant argues that the payments were not made for an antecedent debt, *see* 11 U.S.C. § 547(b)(2); that the plaintiff was solvent when the payments were made, *see* 11 U.S.C. § 547(b)(3); that the payments were made pursuant to an agreement entered into more than ninety days before the petition date, *see* 11 U.S.C. § 547(b)(4)(A); that the payments were intended to be and were made as contemporaneous exchanges for new value given by the defendant, *i.e.* the release of the future lease obligations, *see* 11 U.S.C. § 547(c)(1); and that the payments were made for a debt incurred by the plaintiff in the ordinary course of its business, in the ordinary course of the plaintiff's business, and according to ordi-

nary business terms. *See* 11 U.S.C. § 547(c)(2).

II.

Code § 547 provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ... and

(5) that enables the creditor to receive more than such creditor would receive if—

(A) the case was a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms....

The subsection (c)(1) and (2) exceptions to the debtor's avoiding powers are in the nature of affirmative defenses, as to which the defendant has the burden of proof. *First Software Corp. v. Computer Assoc. Int'l, Inc. (In re First Software Corp.),* 107 B.R. 417, 424 (D.Mass. 1989); 11 U.S.C. § 547(g). The defendant's reliance on those exceptions is unavailing.

Section 547(a)(2) provides:

"new value" [under (c)(1) ] means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation....

Since Congress used "means" rather than "includes", *see* 11 U.S.C. § 102(3), the definition of new value is exclusive. *Energy Co-op, Inc. v. SOCAP Int'l, Ltd. (In re Energy Co-op, Inc.),* 832 F.2d 997, 1003 (7th Cir.1987); *Simon v. Engineered Protection Sys. (In re Hatfield Elec. Co.),* 91 B.R. 782, 784–85 (Bankr.N.D.Ohio 1988). The release of future contractual obligations is not included in that definition, and does not constitute new value. *In re Energy Co-op, Inc., supra,* 832 F.2d at 1003.

Section 547(c)(2) is intended to protect recurring, customary trade transactions, but not one time payments in settlement of contractual claims. *In re Energy Co-op, Inc., supra,* 832 F.2d at 1004; *In re Magic Circle Energy Corp.,* 64 B.R. 269, 273 (Bankr.W.D.Okla.1986) ("[T]he cornerstone of this element of a preference defense is that the creditor needs [to] demonstrate some consistency with other business transactions between the debtor and the creditor."). The settlement reached by the parties was not prescribed by the leases, *Plaintiff's Exhibit 2,* and was a one time, non-recurring transaction outside of the ordinary course of their business.

The defendant's contentions under subsections (b)(2), (3) and (4) are likewise

unavailing. The defendant's primary argument is that the payments were not made for an antecedent debt, but rather in exchange for the release of "executory contracts", *i.e.* the plaintiff's current and future obligations under the leases. In the alternative, the defendant argues that an antecedent debt existed only to the extent of any arrearage. The former argument is easily disposed of. An antecedent debt is defined as a debt which is incurred prior to the relevant transfer. *Tidwell v. Amsouth Bank, N.A. (Matter of Cavalier Homes of Georgia, Inc.)*, 102 B.R. 878, 885–86 (Bankr.M.D.Ga.1989); *Henderson v. Allred (In re Western World Funding, Inc.)*, 54 B.R. 470, 476 (Bankr.D.Nev.1985). A debtor becomes indebted for a rental payment at the time the rent is due. *E.g., Bernstein v. RJL Leasing (In re White River Corp.)*, 799 F.2d 631, 632–33 (10th Cir. 1986); *Sapir v. Eli Haddad Corp. (In re Coco)*, 67 B.R. 365, 370 (Bankr.S.D.N.Y. 1986). Thus, at the time of the payments, any rent arrearage constituted an antecedent debt. Moreover, the logic of the defendant's argument is flawed since it is unlikely that any payment of an antecedent debt would not be exchanged for a release of the obligation underlying that debt.

The defendant's alternative theory that there was an antecedent debt only to the extent of any arrearage likewise fails. Assuming facts in a light most favorable to the defendant, there was a total arrearage of approximately $21,000.00.[1] Thus, the defendant claims, approximately $6,500.00 was not an antecedent debt. However, under ¶ 11C(3) of the lease, five days after the April 20 letter, the defendant had the right to terminate the leases and demand that the plaintiff purchase the vehicles for approximately $79,028.55.[2] *See infra* at 2. Further, Smith testified that the defendant informed him that if the plaintiff did not continue payment, it would sue for the balance of the lease payments, which would have been in excess of $40,000.00. Code § 101(11) defines a debt as a "liability on a claim". Code § 101(4) defines a claim as a

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured....

A debtor has incurred a debt to a creditor when that creditor has a claim against the debtor, even if that claim is contingent, unliquidated, or unfixed. *See In re Energy Co-op, supra,* 832 F.2d at 1001–02 ("When [the debtor] breached the contract with [the creditor], [the creditor] acquired a claim against [the debtor]; therefore, [the debtor] incurred a debt to [the creditor]."); *New York Credit Adjustment Bureau, Inc. v. Just-In Materials Designs, Ltd. (In re Valu Fabrics, Inc.)*, 39 B.R. 513, 516–17 (Bankr.S.D.N.Y.1984). Prior to the $24,000.00 and $3,500.00 payments, the defendant had at least a contingent claim against the plaintiff well in excess of the $27,500.00, and the entire amount of those payments was therefore on account of an ante-

1. The defendant's April 20, 1989 letter states that the arrearage on that date was $13,963.10. At the specified rentals ($433.66 per week on truck number 53610; $1,379.17 per month on truck number 13595), the arrearage would have reached $21,123.60 by late June, when the first payment was made. Smith testified that the arrearage in late June was approximately $20,000.00. It is not clear whether further rent accrued during July, but if so it would have added $3,113.81 to the total, and the arrearage may have been as much as $24,237.41.

2. Paragraph 11D of the leases provides that if the plaintiff were required to purchase the trucks, the price would be determined according to its "Schedule 'A' value". Under Schedule A of the leases, the agreed upon original value of the trucks was $127,821.40 and the agreed upon depreciation between the time of the delivery of the trucks and the August 2 release was

cedent debt.[3]

 For the purposes of subsection (b)(4), a transfer of cash occurs no earlier than the time of the physical transfer of the funds by the debtor to the creditor. *Mason v. Benjamin Banneker Plaza, Inc. (In re Mason)*, 69 B.R. 876, 884 (Bankr.E. D.Pa.1987); 4 *Collier on Bankruptcy* ¶ 547.16[1], at 547–61 (15th ed. 1988). Thus, although the agreement to transfer the funds may have been outside of the preference period, the transfers occurred within the ninety day period.

 The defendant's remaining defense is that the plaintiff was not insolvent at the time of the transfers. Section 547(f) provides that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Rule 301 Fed.R.Evid. provides:

> In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party upon whom it was originally cast.

In the absence of evidence to rebut the presumption, a debtor is entitled to rely on it. *Akers v. Koubourlis (In re Koubourlis)*, 869 F.2d 1319, 1322 (9th Cir.1989). The defendant offered no evidence that the plaintiff was solvent at the time of the payments. Further, Smith testified that at the time of the payments, the plaintiff's liabilities exceeded its assets by over $1,000,000.00.

No issue has been raised with respect to subsection (b)(1), and it is apparent that the transfer was to the defendant. Smith testi-fied and the defendant did not dispute that there would be no distribution to unsecured creditors in a chapter 7 case, so that the defendant received more as a result of the payments than it would in a liquidation.

### III.

For the foregoing reasons, a judgment shall be entered avoiding the June 30 and August 7 payments as preferential and in favor of the plaintiff in the amount of $27,500.00, and IT IS SO ORDERED.

---

$48,792.85, so that the "Schedule 'A' value" was $79,028.55.

**3.** The foregoing assumes that the defendant did not make the required demand that the plaintiff purchase the trucks. However, as noted, Smith testified that the defendant demanded that the plaintiff pay arrearages of $90,000.00. Since the purchase price for the trucks specified in the leases together with the arrearage as of April totalled just over $90,000.00, I am persuaded that the defendant was in fact making a demand that the plaintiff purchase the vehicles. Under that scenario, the entire claim for $90,000.00 was a non-contingent antecedent debt.