In re INTERCONTINENTAL PUBLICATIONS, INC., successor by merger to Intercontinental Publications and The Full Life Corporation, Debtor.

INTERCONTINENTAL PUBLICATIONS, INC., successor by merger to Intercontinental Publications and The Full Life Corporation, Plaintiff,

v.

Paul PERRY and Walsh, Maroney & Ponzini, Defendants.

Bankruptcy No. 5–89–00397.
Adv. No. 5–89–0096.

United States Bankruptcy Court, D. Connecticut.

Sept. 25, 1991.

---

James M. Nugent, Charmoy & Nugent, Bridgeport, Conn., for plaintiff.

Regina F. Kelly, Robert W. Spencer, Walsh, Maroney & Ponzini, Tarrytown, N.Y., for defendants.

## MEMORANDUM AND DECISION ON COMPLAINT TO AVOID TRANSFERS PURSUANT TO BANKRUPTCY CODE §§ 547 AND 548

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiff seeks to avoid transfers to the defendants under Bankruptcy Code §§ 547 and 548.

### I.

Pursuant to a February 10, 1988 agreement (the "Employment Agreement") the defendant Paul Perry was employed by Full Life Corporation,[1] a predecessor to the plaintiff, as the editor-in-chief of its magazine *Second Wind.* An amendment to the Employment Agreement, also dated February 10, 1988, provided that Perry would receive:

[a] half year's salary if we cease publication within the first two years or if you are terminated for any reason within the first two years. This half year's salary ($42,500) will be deposited in a bank's escrow account with instructions for its dispersal. Proof of deposit and these instructions will be given to you at which point this letter of agreement will become valid.

*Defendant's Exhibit* 1, at 2, ¶ 3. Perry, Paul Green, *see supra* note 1, and Philip Anderson, the plaintiff's attorney, subsequently entered into an Escrow Agreement dated February 26, 1988, which stated that pursuant to the Employment Agreement, Green had "delivered to [Anderson], as escrow agent, a check in the amount of $42,-500 representing the amount to be escrowed pursuant to the agreement.... This sum shall be held in escrow for a period not to exceed two years from to-day's date." *Defendant's Exhibit* 2.

In the fall of 1988, Perry learned from Anderson that no funds were ever delivered to Anderson to create the escrow. On December 30, 1988, the plaintiff gave Anderson a $20,000.00 check and Anderson deposited that check in an escrow account. The check cleared the next day. On that same date, Perry, Green, Full Life, the plaintiff, and Perry's law firm, the defendant Walsh, Maroney & Ponzini ("WMP"), entered into an agreement amending the Employment Agreement and Escrow Agreement as follows:

WHEREAS, Green actually deposited only $20,000.00 with Anderson under the Initial Escrow Agreement ...;

1. ... [T]he escrow fund now held by Anderson is to be held by Walsh, Maroney & Ponzini.... ...

2. ... The [$42,500] severance pay shall be paid first from the escrow fund held by Walsh, Maroney & Ponzini. The balance shall be paid to Perry by Full Life in three monthly installments, the first due 30 days after termination, the second due 60 days after termination and the third due 90 days after termination....

. . . .

4. Legal fees of $1,000.00 incurred by Perry to Walsh, Maroney & Ponzini in connection with the enforcement of the Initial Escrow Agreement and negotiation and preparation of this Agreement shall be paid by Green upon receipt of a statement for such services.

---

**1.** Full Life acted through its president at the time, Paul Green.

*Plaintiff's Exhibit* A, at 2–3, ¶¶ 1, 2, 4. By a check dated January 3, 1989, Anderson transferred $20,000.00 to WMP.

On January 6, 1989, Perry was terminated as editor-in-chief of *Second Wind.* By a check dated January 11, 1989, WMP transferred the $20,000.00 escrow to Perry. By checks dated February 10, 1989, the plaintiff paid Perry $7,500.00, the first of the three installments, and WMP $1,000.00. The plaintiff made no further payments to Perry, and filed a petition under chapter 11 of the Bankruptcy Code on April 6, 1989.

On April 28, 1989, the plaintiff commenced the instant action, seeking to have all three payments avoided as preferences under Code § 547. The plaintiff contends that the $20,000.00 payment was made on January 11, 1989, and was therefore within the preference period; that the payments were made on account of antecedent debts; and that Perry received more than he would receive if this were a case under chapter 7. On April 20, 1990, the plaintiff filed an amended complaint alleging that it was insolvent when the transfers were made and that it did not receive reasonably equivalent value for the transferred funds, so that the transfers should be avoided as fraudulent under Code § 548.

## II.

For the reasons that follow, I find that the $20,000.00 payment is not recoverable as a preference or a fraudulent transfer, but that the $7,500.00 payment to Perry and the $1,000.00 payment to WMP are recoverable as preferences.

### A. *$20,000 Payment*

1. Preference

■ Code § 547 provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ... and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

. . . .

(e)(1) For the purposes of this section—

. . . .

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section ... a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time. . . .

The plaintiff has the burden of proving by a preponderance of the evidence each of the elements of § 547(b). *First Software Corp. v. Computer Assoc. Int'l (In re First Software Corp.),* 107 B.R. 417, 420–21 (D.Mass.1989); *Alithochrome Corp. v. East Coast Finishing Sales Corp. (In re Alithochrome Corp.),* 53 B.R. 906, 909 (Bankr.S.D.N.Y.1985); 11 U.S.C. § 547(g).

The plaintiff makes two alternative arguments regarding the transfer of the $20,-000.00: (1) the escrow was not created until the check from Anderson to WMP was honored, which may have been as late as January 8, 1989, within the ninety day preference period; and (2) assuming the escrow was created prior to January 6, 1989, the 90th day before the petition, the plaintiff retained an interest in the $20,000.00 sufficient to give a judgment lien creditor an

interest superior to that of Perry as the escrow beneficiary.

■ Although there appears to be no Connecticut law on point, and the parties cite none, the general common law rule is that in order to constitute an instrument in escrow, it is essential that the instrument pass beyond the control of the depositor, and the depositor should actually part with all present or temporary right of possession and control over it. 28 Am.Jur.2d § 8, at 13 (1966). The creation of an escrow creates in the grantee an equitable interest in the escrow. Pending occurrence of the escrow condition, legal title in the escrow remains in the grantor. *See Carlson v. Farmers Home Admin. (Matter of Newcomb)*, 744 F.2d 621, 626 (8th Cir.1984); *Hassett v. Blue Cross and Blue Shield of Greater N.Y. (Matter of O.P.M. Leasing Serv., Inc.)*, 46 B.R. 661, 667 (Bankr. S.D.N.Y.1985); 28 Am.Jur.2d § 10, at 16. Upon performance of the escrow condition, legal title simultaneously vests in the grantee. 28 Am.Jur.2d § 10, at 16. *See also Matter of O.P.M. Leasing Serv., Inc., supra*, 46 B.R. at 667.

■ Connecticut General Statutes § 52–355a(c) provides that a "judgment lien shall be effective, in the same manner and to the same extent as a similar security interest under the provisions of title 42a...." Connecticut General Statutes § 42a–9–203(1)(c) provides that a security interest "does not attach unless ... the debtor has rights in the collateral." A judgment lien creditor can assert an interest in property only to the extent of the judgment debtor's interest in that property, and if the property is subject to a contractual obligation which binds the judgment debtor, the judgment lien creditor is also bound. *See Septembertide Publishing, B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 680–82 (2d Cir.1989). Thus, an escrow is subject to a judgment lien only to the extent of the grantor's remaining legal right, but that lien is subject to the grantee's equitable interest, *i.e.*, an escrow grantee's interest in escrow property is superior to a judgment lien creditor's interest. 28 Am. Jur.2d § 10, at 16–17. *See also Matter of*

*O.P.M. Leasing Serv., Inc., supra*, 46 B.R. at 667. Because a lien creditor cannot acquire an interest superior to the escrow grantee, the deposit of funds into escrow, rather than the release of funds from escrow upon the occurrence of the condition, is the controlling transfer for preference purposes. *E.g., Matter of Newcomb, supra*, 744 F.2d at 627; *Sapir v. Eli Haddad Corp. (In re Coco)*, 67 B.R. 365, 369 (Bankr.S.D.N.Y.1986); *Matter of O.P.M. Leasing Serv., Inc., supra*, 46 B.R. at 668–69.

■ Here, contrary to the plaintiff's assertion that the escrow was created when the check from Anderson to WMP was honored, I conclude that the escrow was created when the check from Green to Anderson was honored on December 31, 1988. *Tr. April 18, 1991*, at 11–14, 23–24; *Defendant Ex.* 4 and 5. It was at that point that $20,000.00 passed from the unilateral control of the plaintiff, *i.e.*, it could not stop payment on the check and Anderson could not disburse the funds without the written permission of both Perry and the plaintiff. The creation of the escrow transferred to Perry an equitable interest in $20,000.00. The change of the escrow agent from Anderson to WMP did not constitute a transfer of any interest of the plaintiff, but merely a change in the location of an interest already transferred. Accordingly, following the transfer of the plaintiff's equitable interest in the $20,000.00, a creditor could obtain a judicial lien only on the plaintiff's remaining legal interest in the escrow, and that lien would have been subordinate to Perry's equitable right. The relevant date for the purposes of § 547(b) is December 31, 1988, which was outside of the preference period.

2. Fraudulent Transfer

■ Code § 548(a) provides:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

The plaintiff has the burden of proving all of the elements of a fraudulent transfer by a preponderance of the evidence. *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 993 (2d Cir.1981); *First Nat'l Bank v. Minnesota Utility Contracting, Inc. (In re Minnesota Utility Contracting, Inc.)*, 110 B.R. 414, 417 (D.Minn.1990). The plaintiff argues that Perry's services from February, 1988 through December 30, 1988 did not constitute new consideration for the December 30, 1988 agreement and the transfer of the $20,000.00 under that agreement, that the plaintiff had already obtained the value of his services without that consideration, and that therefore Perry did not give any value for the $20,000.00. I disagree.

■ Code § 548(d)(2)(A) provides that " 'value' means ... satisfaction ... of a present or antecedent debt of the debtor. . . ." A debt is defined as a "liability on a claim". 11 U.S.C. § 101(12). A claim is defined as a "right to payment". 11 U.S.C. § 101(5). The plaintiff was obligated under Perry's employment contract to create the escrow, as that was included to help induce him to accept the job, so that Perry had a right to have the escrow created from the time he started employment. When Perry was fired, pursuant to the employment contract the plaintiff immediately became liable to pay Perry the $20,000.00. Thus, the transfer of the $20,000.00 was made in satisfaction of a debt of the plaintiff, so that the plaintiff received value.

The plaintiff has presented no evidence that it did not receive reasonably equivalent value. Indeed, at the time it employed Perry, the plaintiff apparently believed that because of his experience and expertise the severance pay provision was necessary and

reasonable to induce him to work for it, and there is no evidence that the plaintiff was incorrect in that belief.

### B. *$7,500 and $1,000 Payments*

The $7,500.00 payment from the plaintiff to Perry and the $1,000.00 payment from the plaintiff to WMP both occurred on February 10, 1989, and were therefore within the ninety day preference period. The plaintiff is presumed to have been insolvent on February 10, *see* 11 U.S.C. § 547(f), and the defendants offered no evidence to rebut that presumption. *See Durant's Rental Center, Inc. v. United Truck Leasing, Inc. (In re Durant's Rental Center, Inc.)*, 116 B.R. 362, 367 (Bankr.D.Conn.1990) ("In the absence of evidence to rebut the presumption, a debtor is entitled to rely on it."). It is undisputed that both Perry and WMP would receive no distribution in a chapter 7 liquidation. Thus, if the $7,500.00 and $1,000.00 payments were made on account of antecedent debts and were not made in the ordinary course of the plaintiff's business, both of which the defendants deny, they are recoverable as preferences.

### 1. Antecedent Debt

The defendants argue that the $7,500.00 payment to Perry was not made on account of an antecedent debt because, pursuant to ¶ 2 of the Amendment, *see supra* at 3, Perry had no claim to it until February 6, 1989. The defendants appear to argue that the $7,500.00 payment was not made on account of an antecedent debt because payment was made before payment was due. I disagree.

■ An antecedent debt is defined as a debt which is incurred prior to the relevant transfer. *In re Durant's Rental Center, Inc., supra*, 116 B.R. at 366. On the date a debtor becomes obligated to make payments under a contract, it incurs a debt consisting of those payments. Therefore, a payment not yet due under an installment contract is an antecedent debt within the meaning of § 547(b). *Pippin v. John Deere Co. (In re Pippin)*, 46 B.R. 281, 283–84 (Bankr.W.D.La.1984); *Dickinson v. Meredith (In re Wathen's Elevators, Inc.)*, 37 B.R. 870, 871–72 (Bankr.

W.D.Ky.1984). Thus, although payment of the $7,500.00 was not due until February 6, the plaintiff incurred an antecedent debt on January 6 when it terminated Perry's employment. Moreover, Perry was paid on February 10, four days after payment was due, so that the defendants' argument is factually flawed.

**2. Ordinary Course of Business**

Code § 547(c) provides in part:

The trustee may not avoid under this section a transfer—

. . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms. . . .

The defendants argue that the $7,500.00 and $1,000.00 payments were incurred and made in the ordinary course of the plaintiff's business and made according to ordinary business terms.

■ Section 547(c)(2) is in the nature of an affirmative defense, as to which the defendants have the burden of proof. *In re Durant's Rental Center, Inc., supra,* 116 B.R. at 365. Section 547(c)(2) is intended to protect recurring, customary trade transactions, but not one time payments in settlement of contractual claims. *Energy Co-op, Inc. v. SOCAP (In re Energy Co-op, Inc.),* 832 F.2d 997, 1004 (7th Cir.1987); *In re Durant's Rental Center, Inc., supra,* 116 B.R. at 365. Payment of severance to a former editor-in-chief and payment of attorney's fees incurred by that editor-in-chief as a result of the violation of an employment contract do not seem like they would be ordinary, recurring transactions for a magazine, and the defendants have presented no evidence that they were for the plaintiff.

**III.**

For the foregoing reasons, a judgment shall be entered avoiding the February 10 payments as preferential and in favor of the plaintiff in the amount of $8,500.00, and

IT IS SO ORDERED.