**In re G. SURVIVOR CORP., f/k/a the Gitano Group, Inc., et al., Debtors.**

**G.G. SURVIVOR CREDITOR CORP., as Trustee of the G. Survivor Creditor Trust, Plaintiff,**

**v.**

**Eli HARARI, Defendant.**

Bankruptcy Nos. 94–B–40885 JHG to 94–B–40902 JHG and 94–B–43112 JHG. Adversary No. 96–8224A.

United States Bankruptcy Court, S.D. New York.

Feb. 5, 1998.

---

Robinson Brog Leinwand Green Genovese & Gluck P.C. by Richard Cohen, Alesia J. Kantor, New York City, for Eli Harari.

Christy & Viener by William E. Gray, Jr., Emanuel C. Grillo, New York City, for G.G. Survivor Creditor Corp., as Trustee of G. Survivor Corp. Creditor Trust.

JEFFRY H. GALLET, Bankruptcy Judge.

I have four motions before me, a Motion to Add a Cause of Action, a Motion to Strike Extraneous Material and Cross–Motions for Summary Judgment.[1] I will address each separately.

## FACTS

Defendant Eli Harari ("Harari"), served as President of Orit Menswear Company, Inc. ("Orit"), a subsidiary of the Gitano Group, Inc. ("Gitano"), and one of the Debtors, from approximately September 1989 to June 1993. In 1991, Gitano entered into an agreement ("the Salary Agreement") with Harari agreeing to employ him as President of Orit through December 31, 1993. The Salary Agreement provided for Harari's compensation and severance pay.

On March 30, 1993, Harari founded, and became an officer of, Americo Group, Ltd. ("Americo"). In May 1993, Americo contracted with Gitano and Orit to purchase certain assets from Orit ("the Acquisition Agreement"). The Acquisition Agreement closed over two days, during which, on June 3, 1993, Harari contracted with Gitano and Orit to resign as Orit's President and generally release Gitano in exchange for $930,000, less withholding taxes ("the Termination Agreement"). On June 7, 1993, Harari deposited Gitano's certified check for $697,498.80 in his personal checking account.

## PROCEDURAL HISTORY

On March 1, 1994, the Debtors[2] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code ("the Code"). The

1. Subject matter jurisdiction arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). These are core matters under 28 U.S.C. § 157(b)(2)(E).

2. Other than GG Licensing, Inc. Which filed three months later.

cases were procedurally consolidated. On August 30, 1994, the Debtors confirmed their joint plan of liquidation, which provided, *inter alia,* for the substantive consolidation of the cases and estates of the Debtors (except G. Survivor Corp.) into the G. Survivor Corp. case and estate, the merger of the Debtors' assets and liabilities, and the elimination of all inter-company claims. The Confirmation Order granted to the Trustee of the G. Survivor Corp. Creditor Trust all the rights, powers and duties necessary to carry out its responsibilities under the Class 3 Trust Agreement and the Plan, including the right to prosecute the "Avoiding Power Actions," of which this is one.

The Trustee of the G. Survivor Corp. Creditor Trust ("the Trustee") commenced this adversary proceeding on February 28, 1996, against Harari to avoid and recover the transfer made to him by the Debtors, pursuant to §§ 547 and 550 of the Code.

Harari moved to dismiss this proceeding, with prejudice, pursuant to Fed.R.Civ.P. 12(c) and 12(h) as made applicable here by Fed. R. Bankr.P. 7012. I denied that motion.

## 1. Motion to Add a Cause of Action

The Trustee moves pursuant to Fed. R. Bankr.P. 7015 and Fed.R.Civ.P. 15 for leave to amend its complaint to add a cause of action to avoid and recover the payment made by the Debtors to Harari as a fraudulent conveyance under §§ 548 and 550 of the Code.

### THE LAW

■ Fed.R.Civ.P. 15(a), made applicable here by Fed. R. Bankr.P. 7015, states that, after a responsive pleading is served, "a party may amend the party's pleading only by leave of court or written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This rule allows litigants to amend pleadings for a wide spectrum of purposes. *See Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962) (*quoting Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (stating that "[t]he Federal Rules reject the approach

that pleading is a game of skill in which one misstep ... may be decisive to the outcome and accept the principle that the purpose of the pleading is to facilitate a proper decision on the merits")); *Ramos v. O'Connell, HSD,* 169 F.R.D. 260, 262 (W.D.N.Y.1996) (stating that "the federal courts have demonstrated considerable leniency in allowing plaintiffs to amend their complaints whenever justice so requires"); *In re Private Capital Partners, Inc.,* 139 B.R. 120, 125 (Bankr.S.D.N.Y.1992). The decision to grant or deny a motion to amend a complaint is within the discretion of the court. *See Champlain Enters., Inc. v. United States,* 945 F.Supp. 468, 474–75 (N.D.N.Y.1996) (*citing Scottish Air Int'l, Inc. v. British Caledonian Group, PLC.,* 152 F.R.D. 18, 29 (S.D.N.Y.1993)). However, "that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing 'spirit of the Federal Rules.'" *United States v. Continental Illinois Nat'l Bank & Trust Co.,* 889 F.2d 1248, 1254 (2d Cir.1989) (*quoting* Fed.R.Civ.P. 1).

■ Leave to amend a complaint will be denied if it were sought in bad faith, it would cause undue delay or prejudice to the adversary, when it would be futile, or if there has been a repeated failure to cure amendments by amendments previously allowed. *See Champlain Enters.,* 945 F.Supp. at 475 (*citing Foman,* 371 U.S. at 182, 83 S.Ct. at 230). However, "'[m]ere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis ... to deny the right to amend.'" *Ramos,* 169 F.R.D. at 262 (*quoting Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987)). The Second Circuit has noted that the "'[l]onger the period of an unexplained delay, the less that will be required of the nonmoving party in terms of a showing of prejudice.'" *Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 46 (2d Cir.1983) (*quoting Advocat v. Nexus Indus., Inc.,* 497 F.Supp. 328, 331 (D.Del.1980)). *See Phaneuf v. Tenneco, Inc.,* 938 F.Supp. 112, 115 (N.D.N.Y.1996). Where there has been a "considerable delay" between the filing of the original complaint and the motion to amend, courts have shifted the burden to the movant to show "'valid reason for his [or her] neglect and delay.'"

*Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945, 952 (S.D.N.Y.1983), *aff'd*, 730 F.2d 910 (2d Cir.1984) (*citing Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19–20 (1st Cir.1979) (*quoting Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967), *reh'g denied*, 384 F.2d 365 (5th Cir.1967))). *See Phaneuf*, 938 F.Supp. at 115.

## DECISION

■ Harari argues that I should deny the Trustee's motion as a bad faith tactic solely to forestall dismissal of this proceeding on his summary judgment motion. He argues that the Trustee has long had all of the books and records that it needed to formulate a fraudulent conveyance claim and that he will be severely prejudiced if the motion is granted because he would be forced, at this late date, to search records and engage in discovery to defend a cause of action under §§ 548 and 550 of the Code.

■ There is nothing before me to suggest that the Trustee's motion to amend the complaint was unduly delayed. While "it is true that the Second Circuit looks disfavorably upon Rule 15 motions made after all discovery has been completed and a summary judgment motion has been made," *Walton v. Waldron*, 886 F.Supp. 981, 984 (N.D.N.Y.1995), and the Trustee made its motion to amend its complaint after Harari moved for summary judgment, unless the movant demonstrates prejudice, the filing of a summary judgment motion does not compel me to deny the Trustee's motion to amend the complaint. *See, e.g., Adams v. Gould, Inc.*, 739 F.2d 858, 868–69 (3d Cir.1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985) (granting a motion to vacate summary judgment to permit a motion to amend the underlying complaint where the opposing party failed to show undue delay, prejudice or bad faith).[3] Although this summary judgment motion was before me before the Trustee made his motion to amend, the Trustee asserts that the motion to amend the Com-

plaint was a result of Harari's admission during his deposition that "he was owed nothing by Plaintiff pursuant to the Salary Agreement." The deposition was taken on September 9, 1997, and the motion to amend was filed within one week. I find neither that the Trustee unduly delayed bringing its motion nor that making it while a summary judgment motion was before me was improper.

Furthermore, I do not find that the Trustee has acted in bad faith in bringing this motion where Harari has not provided any direct evidence to support that allegation. *See Ramos v. O'Connell*, 169 F.R.D. 260, 262 (W.D.N.Y.1996).

■ Likewise, I find that Harari has failed to show that he will be unduly prejudiced if I grant leave to amend. In deciding whether an amendment will result in undue prejudice, I must decide "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993) (*citing Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir.1986)); *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981); *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1157–58 (2d Cir.1968); *Calloway v. Marvel Enter. Group*, 110 F.R.D. 45, 48 (S.D.N.Y.1986). Harari has not shown that he will expend significant additional resources to conduct discovery and prepare for trial or that the resolution of the dispute will be significantly delayed. Merely stating that an amendment to the complaint is prejudicial because of time, effort and money expended in litigating this action does not constitute undue prejudice. *See Block*, 988 F.2d at 351; *see also Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 715 F.Supp. 578, 580 (S.D.N.Y.1989) (finding that the nonmoving party would not be impermissibly preju-

---

**3.** I note that the District Court for the Eastern District of New York, in an unreported opinion, held that, absent prejudice, the filing of a dispositive motion does not compel denial of a party's motion to amend their complaint. *See United States v. United States Currency in the Amount of $146,800*, No. 96–CV–4882, 1997 WL 269583, at *7 (E.D.N.Y. Apr. 28, 1997). I do not cite to that decision only because it was unreported.

diced beyond the normal difficulties that arise with the amendment of any pleading). Furthermore, I have yet to set a discovery cutoff or a trial date in this proceeding.

Prejudice to the opposing party may occur when the proposed amended pleading alleges "a new set of operative facts." *Citizens & Southern Sec. Corp. v. Braten*, 733 F.Supp. 655, 660 (S.D.N.Y.1990) (*citing Ansam Assocs. Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985)). An amendment is less likely to be prejudicial where the new cause of action arises from essentially the same facts as the existing causes of action. *See Ansam Assocs., Inc.*, 760 F.2d at 446 (affirming District Court's denial of leave to amend where claim alleged new set of operative facts); *see also Doe I v. Karadzic*, 176 F.R.D. 458, 461 (S.D.N.Y.1997) ("Where appropriate, the Second Circuit has instructed this Court to permit leave to amend, even on the eve of trial, where the new claims arise from the same set of operative facts asserted in the original complaint."). Here, the proposed amendment is based on the same facts surrounding the transfer. Thus, I find that granting the motion to amend will not create undue prejudice to Harari.

Finally, Harari argues that the Trustee's claim for recovery of the transfer as a fraudulent transfer would be futile. The standard for determining whether an amendment to a complaint is futile is similar to the analysis of whether a claim would survive a motion to dismiss. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) ("In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion."). Under Fed.R.Civ.P. 12(b)(6), the facts alleged by the plaintiff are assumed to be true and the claim is viewed in the light most favorable to the plaintiff. *See Champlain Enters., Inc. v. United States*, 945 F.Supp. 468, 471 (N.D.N.Y.1996) (*citing Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992)).

The additional cause of action seeks to avoid and recover the transfer made by the Debtors to Harari claiming that the conveyance was made without fair consideration and was made while the Debtors were insolvent. Harari asserts that the Trustee could not prove the fraudulent transfer claim because the payment and related transaction were scrutinized and approved by the boards of directors of the Debtors and twelve lending institutions that had secured claims against the Debtors, all of whom approved the transactions. This argument does not prove, as a matter of law, that there was fair consideration for the transfer. Therefore, viewing the facts alleged in the motion to amend as true, the Trustee has made out a colorable claim for fraudulent conveyances under §§ 548 and 550 of the Code.

## 2. Motion to Strike Extraneous Material

Harari moves, pursuant to Fed.R.Civ.P. 6(d) and 7, to strike from the record (1) the entire affidavit of William F. Gray, Jr. Esq., sworn to September 19, 1997 ("the Gray Affidavit"), (2) the draft "Transaction Summary" annexed as Exhibit 3 to the affidavit of Steven Gerber, sworn to September 19, 1997, and (3) Trustee's submission of a check stub relating to the Transfer.

It is not my function, in deciding motions for summary judgment, to weigh the evidence and determine the truth of the matter. Rather, I need only determine whether there is a genuine issue of material fact for trial. *See Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994); *see also Reed v. Ford Motor Co.*, 679 F.Supp. 873, 874 (S.D.Ind.1988) (citations omitted) (evidence for summary judgment purposes need not be "judged on the same basis as evidence offered at trial"). With this in mind, I turn to the motion to strike.

First, regarding the Gray Affidavit, Fed.R.Civ.P. 56(e) requires that affidavits submitted in connection with a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Attorneys' hearsay affidavits of fact are not evidentiary. Thus, I

have not given any evidentiary weight to the Gray Affidavit. I receive it as argument.

▆ Second, as to the notation "Wages Earned" printed on the check stub and the Transaction Summary, Harari has not argued that these exhibits are not authentic, but only that they have not been authenticated. I will wait until trial to decide the issue admissibility. Significantly, neither of these items was determinative on the motion and cross-motion for summary judgment, and, thus, Harari is not prejudiced by my decision to keep them before me. *See Lakeview Outlets, Inc. v. Uram*, 95–CV–0136, 1996 WL 571520, at *2 (N.D.N.Y. Oct. 2, 1996) (unnotarized affidavit was not excluded where the affidavit was not dispositive of the motion, and therefore, the court's consideration of the exhibit would not prejudice the objecting party).

### 3. Motion and Cross–Motion for Summary Judgment

Harari, brings this motion pursuant to Fed.R.Civ.P. 56, as made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, for summary judgment dismissing this adversary proceeding to recover a preference payment on the grounds that the evidence establishes that the payment in question was not made on account of an antecedent debt. The Trustee cross-moves for summary judgment asserting that Harari was an insider of the Debtors and the transfer was made within one year of the bankruptcy filing on account of an antecedent debt.

### THE LAW

#### A. Summary Judgment Standard

Summary judgment is appropriate if the court determines that the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202

(1986); *In re Ionosphere Clubs, Inc.*, 147 B.R. 855, 860 (Bankr.S.D.N.Y.1992).

In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The allegations of the nonmovant are to be taken as true and are to be given the benefit of doubt when they conflict with those of the movant. *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992); *Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir.1991); *Burtnieks v. City of New York*, 716 F.2d 982, 985–86 (2d Cir.1983).

The moving party initially bears the burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *In re Ionosphere Clubs, Inc.*, 147 B.R. at 861. That burden can be satisfied by showing the absence of evidence supporting the nonmovant's case. *See Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54. When a motion for summary judgment is made and supported by the movant, Fed.R.Civ.P. 56(e) requires the nonmoving party to set forth facts showing that genuine issues of material fact remain for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmoving party may not defeat a properly supported motion for summary judgment by relying on self-serving and conclusory statements concerning the true nature of the facts. *See Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983). As the Supreme Court has noted, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1355–56.

### B. Preferences

Section 547 of the Code provides:

[e]xcept as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (West 1993). Under § 547(g) of the Code, the trustee has the burden of proving the avoidability of the transfer by a preponderance of the evidence. *See* 11 U.S.C. § 547(g) (West 1993); *see also In re Artha Management, Inc.*, 174 B.R. 671, 676 (Bankr.S.D.N.Y.1994). Once a transfer is proven avoidable under § 547(b), it may be recovered from the initial transferee or the entity for whose benefit the transfer was made. *See* 11 U.S.C. § 550(a) (West 1993).

### DECISION

The determination of this motion for summary judgment hinges on whether the $697,498.80 payment ("the Payment") made by the Debtors to Harari was made on account of an antecedent debt.[4] Harari asserts that he and the Debtors entered into the Salary Agreement that provided for a term of employment and severance pay. The Debtors contend that the Salary Agreement was terminated pursuant to the Termination Agreement executed and delivered contemporaneously with the Debtors' delivery of the Payment to Harari. Harari argues that the Debtors' obligation to make the Payment did not arise before the closing under the Acquisition Agreement and Harari's contemporaneous delivery of the Termination Agreement and release. Thus, Harari contends that where the Payment was made at or before the time when the Debtors became obligated to make the Payment, the debt was not antecedent to the Payment. In its opposition papers and cross-motion for summary judgment, the Trustee does not dispute that Harari received the Payment in May or early June 1993. However, the Trustee argues that the transfer of the $930,000, less withholding taxes, was on account of a debt incurred by the Debtors under the Salary Agreement. A determination whether a debt is current or antecedent is dependent on when the debt was incurred. *See In re Moran*, 188 B.R. 492, 496–97 (Bankr. E.D.N.Y.1995) (*citing In re Pan Trading Corp., S.A.*, 125 B.R. 869, 875 (Bankr. S.D.N.Y.1991) (other citations omitted)). Under § 547(b) of the Code, a debt is antecedent if the debtor incurs it before making the alleged preferential transfer. *See In re Artha Management*, 174 B.R. 671, 678 (Bankr.S.D.N.Y.1994) (*citing In re Intercontinental Publications*, 131 B.R. 544, 549 (Bankr.D.Conn.1991)). "A debtor incurs a debt when he becomes legally obligated to pay it." *In re Southmark*, 62 F.3d 104, 106 (5th Cir.1995), *cert. denied*, 516 U.S. 1093, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996) (*citing In re Emerald Oil Co.*, 695 F.2d 833, 837 (5th Cir.1983)). In *Southmark*, a case heavily relied on by Harari,[5] the Fifth Circuit held

---

4. In its opposition papers and cross-motion for summary judgment, the Trustee asserts that Harari was an insider. For purposes of this motion only, in viewing the facts in the light most favorable to the Trustee, I am assuming that Harari was an insider.

5. The Trustee argues that *In re Southmark* ignores contrary case law and legislative history that counsels that debt is to be broadly conceived. The Trustee asserts that in contrast to the narrow view of the *Southmark* court, case law indicates that the Second Circuit takes a broad view of the terms "claim" and "debt."

that a debtor who terminated an employee whose employment contract provided for severance benefits did not incur its debt until the debtor terminated the employee. *See Southmark*, 62 F.3d at 106 (*citing In re Intercontinental Publications*, 131 B.R. at 550). *See In re Tax Reduction Inst.*, 148 B.R. 63, 79 (Bankr.D.C.1992) (although employment agreement that provided for severance benefits existed long before employee was paid, no obligation to pay severance pay arose until the employee was severed); *In re Jeannette Corp.*, 118 B.R. 327, 329 (Bankr. W.D.Pa.1990) ("right to severance pay 'matures' when an employee is terminated").

The Trustee avers that Harari's own documentary evidence contradicts his characterization of the Payment having been made on account of the Termination Agreement. The Trustee asserts that the check stub for the Payment says it was for "Wages Earned" by Harari prior to May 21 and notes that the check was dated on May 20, 1993, possibly certified on the same day, and drawn on the Debtors's payroll account. The Trustee argues that withholding taxes were taken out of the Payment suggesting that the Payment was for salary earned and not in consideration of Harari's delivery of general releases or other obligations arising out of the Acquisition Agreement, in which case the Debtors would have issued a W-9 form for tax reporting purposes. Moreover, the Trustee asserts that Harari does not explain why he was paid $930,000 to leave his employ at Gitano when he was only scheduled to receive $716,250 for the entire calendar year 1993, which was already six months old when the Termination Agreement was signed. Finally, the Trustee contends, assuming, *arguendo* that there was valid consideration for the Termination Agreement, the transfer still constitutes a voidable preference since it is merely a settlement payment.

I find the Trustee's argument that the Payment was for "Wages Earned" unpersuasive. The Salary Agreement provides for severance, the Termination Agreement provides for a payment of $930,000, less withholding taxes, and Harari deposited a check for $697,498.80 [6] a few days after the Termination Agreement was signed. In addition, the Trustee argues that the Payment was for wages earned, but fails to buttress this argument with any facts or evidence indicating that Harari had not been paid wages prior to the signing of the Termination Agreement. Harari was to receive $716,250 for the 1993 calendar year under the Salary Agreement, the transfer was $930,000, which could be because the parties renegotiated the amount. Finally, I find the Trustee's argument that the Payment is a preference because it was made in an effort to settle litigation completely unsubstantiated.

■ If I were prepared to find that the Transfer was severance pay, the Debtors's obligation to pay Harari's severance pay arose when the Debtors terminated Harari. *See In re Southmark*, 62 F.3d 104, 106 (5th Cir.1995) *citing In re Intercontinental Publications*, 131 B.R. 544, 549 (Bankr.D.Conn. 1991). However, after applying the stringent standard for summary judgment against each movant, I find that there are issues of fact arising from the transaction, among them whether the transfer was solely for severance pay or a part of the acquisition transaction. Therefore, the cross-motions for summary judgment are denied.[7] Counsel shall appear before me for a pretrial conference at 9:30 a.m. on March 13, 1998.

### CONCLUSION

For the reasons set forth above: (i) the Cross–Motions for Summary Judgment are DENIED because there are significant issues of fact to be determined at trial; (ii) the

---

While I agree that the definitions of the terms "claim" and "debt" are broad, the Trustee's lengthy explanation of the meanings of these terms does not compel me to disregard the Fifth Circuit's persuasive holding in *Southmark*.

**6.** The check stub indicates that the withholding taxes amounted to $232,501.20. *See* Defendant's Motion for Summary Judgment, Exhibit D.

**7.** To avoid any confusion, since I have just granted the Trustee's motion to add a cause of action under § 548 of the Code, this decision to deny the cross-motions for summary judgment only relates to the § 547 preference claim.

Motion to Add a Cause of Action is GRANT-ED and Plaintiff must serve the amended complaint no later than February 20, 1998; and (iii) the Motion to Strike Extraneous Material is DENIED. In addition, the parties are to appear before me for a pretrial conference at 9:30 a.m. on March 13, 1998.