**In re D.C.T., INC., Debtor.**

**Homer W. McClarty, Trustee, Plaintiff,**

**v.**

**Richard A. Colletta, Defendant.**

**Bankruptcy No. 02–43666–R.**
**Adversary No. 02–5113.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

July 17, 2003.

DCT, Inc., Sterling Heights, MI, pro se.

Daniel J. Weiner, Bloomfield Hills, MI, Mark H. Shapiro, Southfield, MI, for Homer W. McClarty, trustee.

Marion J. Mack, Detroit, MI, U.S. Trustee.

*Opinion Regarding Trustee's Motion for Summary Judgment*

STEVEN W. RHODES, Chief Judge.

This matter is before the Court on the trustee's motion for summary judgment. The defendant, Richard Colletta, filed an objection. Following a hearing on June 16, 2003, the Court took the matter under advisement. The Court now concludes that the trustee is entitled to summary judgment.

## I.

The trustee filed this complaint to avoid and recover alleged preferential transfers made to Richard Colletta. In 1995, Colletta became the vice president and chief financial officer of D.C.T. Colletta's base salary and bonus were set forth in an employment agreement dated November 22, 1995. (Trustee's Br., Ex. 1.)

On April 6, 2000, D.C.T. and Colletta entered into an agreement intended to cover the terms of Colletta's employment in the event of a sale of substantially all of D.C.T.'s assets. (Trustee's Br., Ex. 2.) The agreement provided for a bonus to Colletta if he remained employed with D.C.T. through the closing of the sale. No sale was consummated at that time.

On January 22, 2002, D.C.T. and Colletta entered into a Key Employee Retention Program and Agreement (Trustee's Br., Ex. 3) and a Revocation Agreement (Trustee's Br., Ex. 4). The revocation agreement was intended to revoke the April 6, 2000 agreement. The retention agreement provided that Colletta would receive $85,000 if he remained employed with D.C.T. through a restructuring period or a sale of the business. One-half was to be paid upon the signing of the agreement. Thus, nine days later, on January 31, 2002, D.C.T. paid Colletta $37,520.44.

Under the retention agreement, the other half was to be paid upon the earlier of April 1, 2002, or upon a sale of substantially all of the assets of D.C.T. On February 7, 2002, substantially all of D.C.T.'s assets were sold to Utica Industries. Thus, seven days later, on February 14, 2002 D.C.T. paid Colletta $39,136.73.

On February 1, 2002, D.C.T paid Colletta $4,322.05 for reimbursement of expenses charged to his credit card by other employees. D.C.T. also paid $13,229.04 in state and federal withholding taxes on Colletta's behalf, apparently relating to his income under the retention agreement.

The trustee filed this complaint to avoid and recover the transfers as preferential under 11 U.S.C. § 547(b) and fraudulent

under § 548 and M.C.L. §§ 566.35(1), (2), 566.34(1).

## II.

The trustee has moved for summary judgment on all counts of the complaint.

Colletta asserts that the retention payments were not on account of an antecedent debt because D.C.T.'s obligation to pay the retention bonus arose contemporaneously with Colletta's promise of continued employment and performance of additional services. He also raises the ordinary course of business exception as to both the retention payments and the reimbursement of expenses. Colletta asserts that the retention agreement was negotiated in an arms-length transaction. With respect to the reimbursement of expenses, Colletta contends that it was D.C.T.'s usual practice to have employees use their personal credit cards for business expenses and then seek reimbursement. However, as D.C.T.'s financial condition deteriorated, lower level employees refused to cover expenses with their own credit cards because they feared they would not get reimbursed. Therefore, Colletta permitted employees to charge business expenses on his credit card. Colletta then submitted those expenses to D.C.T. and was reimbursed.

Colletta also asserts that none of the payments were fraudulent because there was no antecedent debt.[1]

## III.

Using the trustee's powers under 11 U.S.C. § 544(a), Count II of the complaint asserts a claim under M.C.L. § 566.35(2), which provides:

A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

M.C.L. § 566.35(2).

Colletta concedes that he was an insider, that the debtor was insolvent when the transfers were made and that he had reasonable cause to believe that the debtor was insolvent. However, he asserts that the retention payments were not on account of an antecedent debt and that there was no intent to defraud.

■ An antecedent debt is defined as a debt which is incurred prior to the relevant transfer. *See Intercontinental Publications v. Perry (In re Intercontinental Publications)*, 131 B.R. 544, 549 (Bankr. D.Conn.1991); *see also Pereira v. Lehigh Savings Bank, SLA (In re Artha Mgmt., Inc.)*, 174 B.R. 671, 677 (Bankr.S.D.N.Y. 1994).

■ Under the retention agreement, D.C.T. owed Colletta the first payment of $37,520.44 upon signing the retention agreement. The retention agreement was signed on January 22, 2002. The payment was made on January 31, 2002. Thus, the first transfer occurred after the debt became due. The second payment was due upon the earlier of a sale of D.C.T.'s assets or April 1, 2002. D.C.T.'s assets were sold on February 7, 2002. The second payment was made to Colletta on February 14, 2002. Thus, this transfer also occurred after the debt became due. Accordingly,

---

1. Colletta further argues that there was no intent to defraud. However, this argument must be rejected simply because M.C.L. § 566.35(2) does not require any intent to defraud. He also argues that D.C.T. received reasonably equivalent value in exchange for each transfer. But again, Michigan law provides no such defense to a claim under M.C.L. § 566.35(2).

the Court concludes that both retention payments were on account of antecedent debts and that therefore the elements of M.C.L. § 566.35(2) are met.

### IV.

Colletta also argues that the transfers were in the ordinary course of business. M.C.L. § 566.38(6)(b) provides an exception to the avoidance of an otherwise fraudulent transfer under § 566.35(2) if the transfer is made in the ordinary course of business or financial affairs of the debtor and the insider. This defense is derived from the Bankruptcy Code. However, unlike the Code, it does not require that the transfer be made in payment of a debt incurred in the ordinary course of business or that it be made according to ordinary business terms.

■ Whether a transfer was in the "ordinary course" requires a consideration of the pattern of payments engaged in by the debtor and the insider prior to the transfer challenged. Courts must engage in a "peculiarly factual" analysis. *Lovett v. St. Johnsbury Trucking,* 931 F.2d 494, 497 (8th Cir.1991). *See also Waldschmidt v. Ranier (In re Fulghum Const. Corp.),* 872 F.2d 739, 743 (6th Cir.1989) (addressing the ordinary course exception of § 547(c)); *Yurika v. UPS (In re Yurika Foods Corp.),* 888 F.2d 42, 45 (6th Cir.1989) (Under § 547(c)(2)(B), which is nearly identical to § 566.38(6)(b), the "court should examine several factors, including timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made.").

■ In support of his position that the retention payments were made in the ordinary course of business, Colletta contends that the retention agreement was negotiated in a typical arms-length transaction. However, this argument does nothing to establish that the payments were in the ordinary course of business between the debtor and Colletta. The retention payments were, by their very nature, unusual and out of the ordinary. They were made in connection with the termination of the debtor's operations. Accordingly, the ordinary course exception does not apply.

■ With respect to the expense reimbursement, Colletta contends that it was the debtor's normal practice to have its employees use their personal credit cards for their business expenses and then for the debtor to reimburse them. He further indicated that as the debtor's financial condition deteriorated, the employees were reluctant to follow that practice for fear that they would not be reimbursed. Therefore, Colletta permitted them to use his credit card, he then submitted the charges for reimbursement. Colletta states in his affidavit that he is aware of other situations in the past in which managers of the debtor put travel charges of subordinates on their credit cards.

Colletta has made no attempt to show that this practice was used by him in the past and that he was reimbursed for expenses of other employees. Indeed, his explanation establishes that this arrangement was not the norm. Accordingly, the Court must conclude that the ordinary course exception does not apply to the reimbursement of expenses.

For the foregoing reasons, the trustee is entitled to summary judgment on Count II of his amended complaint for the avoidance of the transfers under M.C.L. § 566.35(2). It is therefore unnecessary to address the remaining counts of the complaint.

However, it is not entirely clear whether the trustee is seeking from Colletta the amounts paid by the debtor in state and federal withholding taxes on Colletta's behalf. If so, the trustee shall file a brief

regarding that aspect of the claim by July 31, 2003. Colletta may file a response by August 15, 2003. A hearing will be scheduled if the Court deems it necessary.

An appropriate order will be entered.