971 F.2d 396
 Bankr. L. Rep. P 74,811
In re FOOD CATERING & HOUSING, INC., f/k/a Universal
Services, Inc.--International, Debtor.
In re FOOD CATERING & SUPPLY, INC., f/k/a Galley Stores &
Supply Co., Inc., Debtor.
Kent W. MORDY, Trustee of Food Catering & Housing, Inc., and
Food Catering & Supply, Inc., Plaintiff-Appellee,
v.
CHEMCARB, INC., d/b/a ChemCarb CO2, Defendant-Appellant.
 No. 91-35691.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 1, 1992.
Decided July 31, 1992.
 
 Robert N. Windes, Le Gros, Buchanan, Paul & Whitehead, Seattle, Wash., for defendant-appellant.
 Bruce J. Borrus, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for trustee-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before: FARRIS, NORRIS and KOZINSKI, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Chemcarb, Inc., appeals the grant of summary judgment in favor of the trustee avoiding several payments Chemcarb received from the debtors. Chemcarb asserts that: 1) the $18,830.47 payment from the debtors was excepted from the voidable preference rule by 11 U.S.C. § 547(c)(2); and 2) the $24,349.58 payment from International Catering Enterprises Inc., was not a voidable preference. We affirm.
 
 FACTS
 
 2
 Chemcarb was a creditor to both Food Catering & Housing, Inc., and Food Catering & Supply, Inc., supplying both with liquid carbon dioxide. Its invoices required payment within twenty days. The debtors frequently paid Chemcarb as late as sixty days. No payment covered more than eight invoices.
 
 
 3
 On October 13, 1987, Chemcarb's president formally requested payment for several outstanding invoices. On October 26th, Chemcarb received a check for $18,830.47, which represented payment for twenty invoices. Some of the paid invoices were over ninety days old.
 
 
 4
 On October 28th, the debtors sold substantially all of their remote site food and catering assets to a third party, International Catering Enterprises, Inc. In return, International Catering assumed some of the debtors' debt, including $24,349.58 still owed to Chemcarb. International Catering subsequently paid Chemcarb.
 
 
 5
 On November 23, 1987, Food Catering & Housing filed for bankruptcy. On December 23rd, Food Catering & Supply did the same. After discovering the prior payments, the trustee for the debtors brought a preference action against Chemcarb to return the two payments. The bankruptcy court granted the trustee's motion for summary judgment on May 11, 1990, and the district court affirmed on October 24th. This appeal followed.
 
 DISCUSSION
 
 6
 The Bankruptcy Code permits a trustee to avoid any pre-bankruptcy transfer of a debtor's assets if the transfer: 1) is to or for the benefit of a creditor; 2) is for an antecedent debt owed by the debtor before the transfer; 3) is made while the debtor was insolvent; 4) is made within 90 days of the bankruptcy filing; and 5) enables the creditor to receive more than such creditor would have if the debtor liquidated and distributed the estate to all creditors. 11 U.S.C. § 547(b)(1-5). We review a grant of summary judgment de novo. In re Wolf & Vine, 825 F.2d 197, 199 (9th Cir.1987).
 
 
 7
 Chemcarb does not dispute that it received payment for antecedent debts and that the disputed transfers were made within ninety days of the bankruptcy filing.[1] Chemcarb argues that: 1) its receipt of payment from International Catering was not a voidable preference; and 2) payment for the twenty invoices was excepted from the trustee's voidable preference power by section 547(c)(2). Each argument fails.
 
 
 8
 Section 547 only requires that a transfer "to or for the benefit of a creditor" occur. See § 547(b)(1). As consideration for the asset sale, International Catering assumed the debtors' pre-existing liability to Chemcarb. Asset transfers made to third parties in exchange for payment of a debtor's antecedent debts are transfers "to or for the benefit of a creditor" under section 547(b)(1). See In re Royal Golf Products Corp., 908 F.2d 91, 95 (6th Cir.1990) (third party payments are voidable to the extent that the security provided to the third party depleted the debtor's estate); see also In re Conard Corp., 806 F.2d 610, 612 (5th Cir.1986) (transfer of debtor's assets in exchange for a simultaneous assumption of debt by the third party purchaser indirectly benefitted creditor and was a voidable preference); Brown v. First Nat. Bank of Little Rock, Ark., 748 F.2d 490, 491 (8th Cir.1984) (indirect transfers to third parties in return for payments to creditors avoidable because they result in diminution of the debtor's estate).
 
 
 9
 Chemcarb argues that the trustee should have brought its preference action under section 550(a)(2), not section 550(a)(1). Section 550(a)(1) permits the trustee to recover transferred assets from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." It is undisputed that the debtors transferred assets to International Catering in return for an assumption of the Chemcarb debt. Chemcarb was therefore an "entity for whose benefit such transfer was made". 11 U.S.C. § 550(a)(1). The trustee properly brought its preference action.
 
 
 10
 Preferences are not voidable if a payment for debt was: 1) incurred "in the ordinary course of business or financial affairs of the debtor and the transferee"; 2) made in the ordinary course of business; and 3) made according to ordinary business terms. See 11 U.S.C. § 547(c)(2)(A-C). Chemcarb has the burden of proving that section 547(c)(2) applies by a preponderance of the evidence. See In re Loretto Winery, Ltd., 107 B.R. 707, 709 (Bankr. 9th Cir.1989); 11 U.S.C. § 547(g).
 
 
 11
 To qualify for the "ordinary course" exception, a creditor must prove that: 1) the debt and its payment are ordinary in relation to past practices between the debtor and this particular creditor; and 2) the payment was ordinary in relation to prevailing business standards. See In re Fred Hawes Organ., Inc., 957 F.2d 239, 244 (6th Cir.1992); WJM, Inc. v. Massachusetts Dept. of Public Welfare, 840 F.2d 996, 1010-11 (1st Cir.1988).
 
 
 12
 The record establishes that Chemcarb: 1) never received payment for more than eight invoices; 2) admitted that industry practice required payment within sixty days; and 3) had made a written request for payment. The October payment covered invoices up to ninety-six days overdue. Delay is particularly relevant in taking a payment outside the ordinary course of business exception. See In re Gold Coast Seed Co., 24 B.R. 595, 597 (Bankr. 9th Cir.1982); accord In re Craig Oil Co., 785 F.2d 1563, 1567-68 (11th Cir.1986). In addition, the payment was four times greater than any prior payment. Section 547(c)(2) is inapplicable. See Loretto Winery, 107 B.R. at 710.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Chemcarb argues for the first time in its Reply Brief that the debtors failed to provide evidence of insolvency at the time of the disputed transactions. Further, Chemcarb argues it was "preparing" discovery requests that "would have provided Chemcarb with more evidence to refute [debtor's] claim." Reply Brief at 5. We decline to consider Chemcarb's argument because "appellants cannot raise a new issue for the first time in their reply briefs." United States v. Birtle, 792 F.2d 846, 848 (9th Cir.1986) (citations omitted)