**In re S.E.L. MADURO (FLORIDA), INC., Debtor.**

**James S. FELTMAN, Trustee Plaintiff,**

v.

**BOARD OF COUNTY COMMISSIONERS OF METROPOLITAN DADE COUNTY, Defendant.**

Bankruptcy No. 95–12023–BKC–RAM.
Adversary No. 96–0548–BKC–RAM–A.

United States Bankruptcy Court,
S.D. Florida.

Feb. 25, 1997.

Markowitz, Davis, Ringel & Trusty, Thomas M. Messana, Miami, FL, for Trustee.

Steven B. Bass, Dade County Attorney, Miami, FL, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

ROBERT A. MARK, Bankruptcy Judge.

Before the Court are the cross motions for

partial summary judgment [1] filed by Plaintiff, James S. Feltman ("Trustee"), trustee for S.E.L. Maduro (Florida), Inc. ("Debtor"), and by Defendant, the Board of County Commissioners of Metropolitan Dade County ("County"). The County received two payments from the proceeds deposited into an escrow account by the purchaser of the Debtor's assets within the 90 day preference period. The parties dispute whether these payments are avoidable as preferences under § 547(b) of the Bankruptcy Code.

On December 9, 1996, the Court conducted a hearing on the cross motions. After review of the record and applicable law, the Court finds that the two transfers to the County were preferential under § 547(b). Payments made from sale proceeds are properly treated as property of the estate even if the Debtor never had actual control of the funds. Accordingly, the Court grants the Trustee's Motion for Partial Summary Judgment and denies the County's Cross Motion for Summary Judgment.

## FACTUAL BACKGROUND

Prior to the filing of this involuntary Chapter 7 case on April 28, 1995, (the "Filing Date"), the Debtor operated a stevedoring and terminal services business out of the Port of Miami in Dade County, Florida. During its operation at the Port of Miami, the Debtor became obligated to the County for, among other things, office rent, land rent, terminal rent, vessel docking fees, storage and demurrage. As of January 25, 1995, the debtor owed the County over $2 Million. The documents and agreements that led to the two transfers at issue arose out of the purchase of the Debtor by I.T.O. Corporation of Florida ("I.T.O."). On January 24, 1995, the Debtor entered into a Letter Agreement and Guarantee with the County in which,

among other provisions, the Debtor agreed to pay the County $50,000 and $151,214 upon the closing of a certain Asset Purchase Agreement ("APA") between the Debtor and I.T.O. Trustee's Exhibit A. On January 25, 1995, the Debtor and the County executed an Assignment pursuant to which the Debtor assigned to the County all of its rights to receive future payments, up to $600,000, under the APA. Trustee's Exhibit B.

On January 27, 1995, the Debtor entered into the APA with I.T.O. under which I.T.O. purchased substantially all of the Debtor's assets. Trustee's Exhibit C. Under the terms of the APA, I.T.O. was required to deposit $603,981 into an Escrow Account. Trustee's Exhibit C. Pursuant to section 1.2.2 of the APA, the monies deposited by I.T.O. into the Escrow Account were designated for payment of several obligations of the Debtor. Trustee's Exhibit C. Under the APA, these obligations would be specifically identified by I.T.O. in a subsequent Escrow Agreement between, among other parties, I.T.O. and the Debtor. Trustee's Exhibit C.

On January 30, 1995, an Escrow Agreement was executed by I.T.O., the Debtor, Maduro Holding N.V. (The Debtor's parent company), and Armstrong & Mejer (the Escrow Agent). Trustee's Exhibit D. Schedule A of the Escrow Agreement designates the County as one of the creditors to be paid from the monies deposited into the Escrow Account. Trustee's Exhibit D.

Pursuant to the APA and the Escrow Agreement, I.T.O. transferred $603,981 to the Escrow Agent via wire transfer on January 30, 1995.[2] On January 31, 1995, the Escrow Agent made two payments from the Escrow Account to the County in the amounts of $50,000 and $151,214.[3] The exe-

---

1. Summary Judgment is appropriate where the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard applies equally to the granting of partial summary judgment. *See Pruitt v. City of Montgomery, Ala.,* 771 F.2d 1475, 1477 (11th Cir.1985).

2. Since I.T.O.'s deposit was not sufficient to pay off the designated liabilities, the Debtor's parent

company also deposited $112,445.94 into the Escrow Account on the same date.

3. An additional transfer of $300,000 was made to the County on the same date by the Escrow Agent. That transfer is also challenged by the Trustee in its Complaint but is not at issue in the cross motions for summary judgment.

**990**

cution of the Escrow Agreement, I.T.O.'s wire transfer, and the two transfers made to the County by the Escrow Agent all occurred within 90 days of the Debtor's bankruptcy filing.[4]

### DISCUSSION

The Trustee seeks to avoid two money transfers, totaling $201,214, made to the County within 90 days of the Filing Date. The Trustee urges a per se rule of preference recovery from any creditor that receives more than its pro rata share of the purchase proceeds from the sale of a debtor's assets if the payments were made within 90 days of the bankruptcy. The Trustee argues that this rule should apply regardless of whether the purchase proceeds were ever legally controlled by the debtor or whether the buyer had a legitimate business reason to designate payment to certain creditors. The County argues that the two transfers were not preferential because: (i) the transferred funds were not property of the estate since they were never under the Debtor's control; and (ii) the transfers were intended as a contemporaneous exchange for new value provided to the Debtor under § 547(c)(1).

The primary issue before the Court is whether transfers of property to a creditor, within 90 days of bankruptcy, are avoidable as preferences under § 547(b) where: (1) the transferred funds were not actually controlled by the Debtor; (2) the payments were a condition of the purchase of the Debtor's assets required by the purchaser; and (3) the buyer may have paid more for the assets because designating the use of the escrowed proceeds was important to the buyer.

### A. THE UNDISPUTED ELEMENTS OF § 547(b)

■ To recover the $50,000 and $151,214 transfers as preferential under 11 U.S.C. § 547(b), the Trustee must prove that the transfers: 1) were of an interest of the debtor in property; 2) were on account of an antecedent debt; 3) were to or for the bene-

fit of a creditor; 4) were made while the debtor was insolvent; 5) were made within 90 days prior to the commencement of this bankruptcy case; and 6) enabled the County to receive more than it would have received if the transfers had not been made and it had asserted its claim in a Chapter 7 liquidation.

There is no dispute regarding the final five elements. First, the County is a creditor in this case and clearly benefitted from the transfers. Second, the transfers were on account of over two million ($2,000,000) that the Debtor owed the County for its prior operation at the Port of Miami. The County does not dispute that at the time the transfers were made the Debtor was insolvent.

■ The fifth and sixth elements are also clearly met. The transfers occurred, for preference purposes, when the funds were deposited into the Escrow Account by I.T.O. *See In re Intercontinental Publications, Inc. v. Perry (In re Intercontinental Publications, Inc.),* 131 B.R. 544, 548 (Bankr. D.Conn.1991). That transfer occurred on January 30, 1995, within 90 days of the Filing Date. Finally, since there are no monies in the estate and numerous creditors in addition to the County and the other designated creditors who were paid from the Escrow Account, allowing the County to keep the transfers would make it better off than it would have been in a liquidation case. *See Barash v. Public Fin. Corp.,* 658 F.2d 504 (7th Cir. 1981).

### B. I.T.O.'S WIRE TRANSFERS WERE TRANSFERS OF THE DEBTOR'S INTEREST IN PROPERTY

■ The only § 547(b) element at issue is whether the wire transfers by I.T.O. were "interests of the debtor in property". The County argued at length that once the conditions of the Escrow Agreement were met, the Debtor lost its interest in the escrowed funds. The County's argument misses the point. It is true that under Florida law, funds that are deposited into an escrow account by a debtor, for the benefit of others,

---

**4.** The Letter Agreement, the Assignment, and the APA were all executed over 90 days before the Filing Date. This fact is not relevant for purposes of the partial summary judgment motions

since both the transfers into and out of the Escrow Account occurred within the 90 day preference period.

cannot be characterized as property of the estate. *See Dynasty Express Corp. d/b/a General Rent–A–Car v. Eric C. Kurtzman, et al. (In re AGSY),* 120 B.R. 313, 317–320 (Bankr.S.D.N.Y.1990). However, it is also clear that if a debtor deposits its own funds into an escrow account, *within the preference period,* and directs the escrow agent to make payments to creditors, the creditors that received payment from the escrow agent could not defend a preference action by arguing that the money did not come from the debtor's estate. *In re Intercontinental Publications,* 131 B.R. at 548.

The Trustee is not arguing that funds deposited into an escrow account by a debtor remain property of the estate after they are deposited. Rather, he is arguing that the money deposited into the Escrow Account in this case was property of the estate when it was paid into the account by I.T.O. because it was paid in exchange for the Debtor's assets. The purchase money was deposited into the Escrow Account within the 90 day preference period. Thus, argues the Trustee, the transfer of funds into the Escrow Account for the benefit of the County is an avoidable transfer of property of the estate.

The County cites to *Nordberg v. Sanchez (In re Chase & Sanborn),* 813 F.2d 1177, 1180 (11th Cir.1987), for the proposition that a debtor must have control of transferred assets before a Trustee is able to avoid the transfer. It then argues that since the terms of the Escrow Agreement and APA specifically designate I.T.O. as the party in control of the proceeds of the sale, the Debtor had no discretion or control over how to spend the proceeds. The County's reliance on the Eleventh Circuit's "control" analysis in *Chase & Sanborn* is misplaced. First, *Chase & Sanborn* was a fraudulent conveyance case. The Court specifically noted that the standards for establishing control are different for preference purposes. 813 F.2d at 1181. Second, in *Chase & Sanborn,* the debtor's bank account was simply a brief stop or conduit in a "large, complicated scheme involving numerous transactions among several corporate entities." *Id.* at 1182. Thus, the factual context of that case had little to do

with a case like this one involving payments from the sale proceeds of a debtor's assets.

■ The "control" issue in this case must be viewed in the context of the asset sale. True, the Debtor never actually controlled any of the funds at issue. However, I.T.O. did not transfer these funds simply to pay the designated creditors. It transferred them as consideration for its acquisition of the Debtor's assets. The Debtor's "control" was established when it agreed, in the APA, to sell its assets to I.T.O. in return for I.T.O.'s transfers to the County and other designated creditors.

Avoiding preferential transfers received indirectly from the buyer of a debtor's assets is not a novel concept. Other · courts have reached the same result where those transfers are for the benefit of the debtor or result in the diminution of the debtor's estate. *See Buckley v. Jeld–Wen (In re Interior Wood Prods. Co.),* 986 F.2d 228 (8th Cir. 1993); *See also Taunt v. Fidelity Bank (In re Royal Golf Prods. Corp.)* 908 F.2d 91, 94 (6th Cir.1990) (third party payments are voidable to the extent that the debtor pledged its property as security for these payments and thus depleted its estate); *Sommers v. Burton (In re Conard Corporation),* 806 F.2d 610 (5th Cir.1986) (assumption of debt by purchaser as part of sales price constituted avoidable transfer).

The Eighth Circuit's opinion in *Interior Wood* is particularly instructive because the facts are so similar. In that case, Jeld–Wen was owed $125,194.04 by the debtor, Interior Wood. Jeld–Wen owned 51% of Jordan. Jordan entered into an Asset Purchase Agreement ("Agreement") with Interior Wood that provided for the sale of substantially all of Interior Wood's assets to Jordan. In addition, the Agreement provided that Jordan would assume certain designated unsecured debts, including the one owed to Jeld–Wen. The Agreement specifically provided that these debts would be paid from the purchase price of the debtor's assets. In accordance with the terms of the Agreement, Jordan paid Jeld–Wen $125,194.04 within 90 days of the filing of an involuntary bankruptcy petition against Interior Wood.

The issue in *Interior Wood* was whether the payment by Jordan was a transfer of Interior Wood's property even though Jordan made the payments, not Interior Wood. After considering arguments virtually identical to those raised by the County in this case, the court held that "it was irrelevant whether Jeld–Wen was paid directly by Interior Wood or indirectly by Jordan because the transfer was of Interior Wood's property." 986 F.2d at 231. In reaching its conclusion, the court agreed that the payments by Jordan were preferences because they were "made as part of the purchase price and **would have been available to satisfy Interior Wood's unsecured debts if it had not been transferred to Jeld–Wen**." *Id.* (emphasis added).

The *Interior Wood* court also found no relevance in the fact that the payment to the preferred creditor come from an escrow account. "A transfer of the debtor's property is not immune from recovery as a voidable preference merely because it was not transferred directly by the debtor, but through an escrow account." 986 F.2d at 231.

■ This Court agrees with the holding and reasoning in *Interior Wood* as applied to the almost identical facts in this case. Section 1.2.2 of the APA clearly states that the payment by I.T.O. of $603,981 into the Escrow Account was the purchase price for the Debtor's assets. Trustee's Exhibit C. The subsequent transfers to designated creditors were preferential because those creditors received a disproportionate share of the proceeds from the purchase price leaving other similarly situated, but not designated, creditors with claims against a debtor with no remaining assets.

The Court rejects the remaining arguments in defense of the claim. First, it could be argued that the Trustee should be denied recovery since I.T.O., not the Debtor, designated the preferred creditors in the Escrow Agreement.[5] Moreover, I.T.O. may have had a valid business reason to want certain creditors paid as part of the purchase transaction. Indeed, it is not hard to imagine that I.T.O. wanted the County repaid to clear the way for unencumbered future operations at the Port of Miami. Finally, it is possible that if I.T.O. was not permitted to designate preferred creditors, the purchase price would have been substantially lower. If that is true, then allowing recovery of the designated payments may create a pool for all creditors larger than the amount that would have been available if the assets had been sold to a purchaser who was not permitted to designate.[6]

■ Even assuming the existence of a factual record that could support these arguments, the Court finds that the Trustee is entitled to judgment as a matter of law because of general preference policy and certain practical obstacles. The central theme of preference policy is to ensure "equal distribution of assets among creditors." *Deel Rent–A–Car, Inc. v. Levine,* 721 F.2d 750, 754 n. 13 (11th Cir.1983). That process of distribution is hampered when a Debtor's assets are used, whether directly or indirectly, to favor some creditors over others within the preference period. The effect of the transaction between I.T.O. and the Debtor, although not involving the typical preference scenario, certainly favored the County over non-designated creditors.

Carving out exceptions by requiring a factual inquiry into who designated the creditors and what effect designations may have had on the purchase price would be inconsistent with preference policy and create an intolerably high risk of collusion. Any time an insolvent company wanted to pay pre-

---

5. Although not discussed in *Interior Wood,* the designation in that case was presumably controlled by Jordan, the buyer. In fact, Jeld–Wen, the preferred creditor, was also a 51% owner of Jordan.

6. A related concern is that if this transaction was still executory on the petition date, the Trustee would have assumed or rejected the deal in its entirety. The estate would not have received the entire purchase price for general distribution to creditors, without the buyer receiving whatever actual or perceived benefits it derived from the designation. By applying preference law to a transaction that closes prepetition, the net effect is to undo a portion of what may have been a multifaceted transaction. Arguably, this would prejudice I.T.O. who completed its payment obligations under the transaction, but is now deprived of whatever benefit it expected from having the designated creditors paid.

ferred creditors from the proceeds of a sale of assets, it could "cleanse" the funds by having the proceeds paid to an escrow agent who is instructed to disburse to the preferred creditors.

■ The Court rejects this approach in favor of a bright line rule. Preference liability will be strictly imposed on creditors who receive preferential treatment as part of a purchase transaction where it is clear that the money they are receiving is money that was part of the purchase price. Applying that rule here, the Court finds that there are no genuine issues of fact. As a matter law, the Court therefore finds that the $50,000 and $151,214 wire transfers were "transfers of the debtor's interest in property" which can be recovered by the Trustee for the benefit of the Debtor's estate.

### C. THE ESCROWED FUNDS WERE NOT PAID TO DADE COUNTY AS PART OF A CONTEMPORANE-OUS EXCHANGE FOR NEW VAL-UE PROVIDED TO THE DEBTOR

■ Under § 547(c), certain transfers are excepted from the Trustee's avoidance power. The County argues that the funds it received are immune from recovery under § 547(c)(1) [7] because they were intended to be a contemporaneous exchange for "new value" given to the debtor. The County asserts that the "new value" came in the form of assurances by the Port of Miami to I.T.O. that it would grant it an operating permit. The County contends that these assurances enabled the Debtor to close the deal with I.T.O.

Section 547(a)(2) of the Code defines "new value" as:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee

Assurances by the Port of Miami are legally insufficient to rise to the level of "new value".

As evidenced by the term's definition in § 547(a)(2), "new value" must be concrete and definitive, not attenuated and hypothetical. *See Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Systems, Inc.)* 861 F.2d 1555, 1559 (11th Cir.1988). Otherwise, any party defending a preference action can develop some story or scheme for how it gave "new value" to the debtor. *Id.* In this case, the County's "assurances" to I.T.O. fall short of satisfying this "new value" standard and do not raise a genuine issue of material fact that would preclude summary judgment.

### CONCLUSION

The goals of preference legislation are to maximize estate value and preserve the effectiveness of the distributional scheme in bankruptcy. Courts must strive to achieve these goals by disallowing any transactions, whether circuitous or not, that leave certain creditors holding the bag while other similarly situated creditors have their debts fully or substantially paid. Accordingly, the Court finds that the two transfers made to the County in this case are avoidable by the Trustee under § 547(b). Therefore it is—

**ORDERED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment is granted.

2. Defendant's Cross Motion for Partial Summary Judgment is denied.

**DONE AND ORDERED.**

■

---

7. This subsection provides as follows:
   (c) The trustee may not avoid under this section a transfer—
     (1) to the extent that such transfer was—
     (A) intended by the debtor and the creditor to or for whose benefit such transfer was made

to be a contemporaneous exchange for new value given to the debtor; and
     (B) in fact a substantially contemporaneous exchange