### In re SNEAKERS SPORTS GRILL, INC., Debtor.

### Gregory K. Crews, as Trustee of the Estate of Sneakers Sports Grill, Inc., Plaintiff,

v.

### Shopping Center Equities, Inc., Defendant.

### Bankruptcy No. 98–01123–3F7. Adversary No. 98–70.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Jan. 4, 1999.

Tracy Considine, Jacksonville, Florida, for defendant.

Richard R. Thames, Jacksonville, Florida, for plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This adversary proceeding requires the determination of whether third-party payment to a creditor is an avoidable preference under 11 U.S.C. § 547(b). From the evidence presented, the Court finds such payment is not avoidable.

### FINDINGS OF FACT

#### A. Introduction

On April 1, 1998, Gregory K. Crews ("Trustee"), Trustee for the estate of Sneakers Sports Grille Inc. ("Debtor") filed a complaint seeking to avoid and recover a transfer pursuant to 11 U.S.C. § 547(b).

Debtor, a Florida corporation owned by David A. Berlin ("Berlin") and William O'Donnell ("O'Donnell"), operated a sports-theme restaurant in Jacksonville Florida. Debtor leased space in a shopping plaza from Shopping Center Equities, Inc. ("SCE"), defendants in this proceeding, for the operation

of its restaurant.[1] SCE's lease to Debtor included furniture, fixtures, and equipment obtained by SCE from a previous tenant.

Debtor routinely defaulted on the terms of these leases.[2] On July 14, 1997 SCE sent Debtor notice of default in the sum of $66,595.05 for rent and use of the premises leased.[3] (Pl.'s Ex. 26.) This notice demanded payment or possession within five business days from receipt. Default of obligations under the lease not being Debtor's only financial problems, Berlin began to look for investors. Greg Pratt ("Pratt") was referred to Berlin through a friend that told Pratt that Berlin was looking for investors. However, Pratt sought to purchase Debtor's assets and business rather than make an investment.

## B. Sneakers' Agreement with Debtor

Berlin and Pratt signed a Letter of Intent on October 26, 1997 describing terms of an offer by Pratt to purchase Sneakers Sports Grille, the Debtor corporation.[4] (Pl.'s Ex. 1.) The purpose of this letter of intent was to outline the essential terms of the offer, which expired on November 14, 1997. On November 11, 1998, Debtor and Sneakers Enterprises, Inc. ("Sneakers"), a corporation formed by Pratt, entered a Purchase and Sale Agreement ("Agreement"). (Pl.'s Ex. 2.) Berlin signed this Agreement individually and as president of Debtor and Pratt

signed as president of Sneakers. The signed Agreement called for a purchase price of $90,000.00 for all of Debtor's assets and up to an additional $10,000.00 for the current value of the inventory. The Agreement provided:

8. Conditions Precedent to Seller's Obligations. Seller's obligations to perform under this Agreement are subject to the fulfillment of each of the following conditions before or at the Closing:
. . .

(f) Purchaser shall secure a new lease from Landlord agreeable to Purchaser and a General Release from Landlord in favor of Seller, David A. Berlin and William O'Donnell by paying to Landlord the sum of $50,000.00.

Debtor attached an extensive list of inventory to this agreement as Schedule A. This list was a partial inventory of the assets being transferred from Debtor to Sneakers as part of the purchase and sale agreement. Also attached was Schedule B, listing leased assets.[5] All of the property listed in Schedule B is owned by SCE and was considered part of the lease between SCE and Debtor. Schedule C to this agreement allocated the $100,000.00 purchase price paid by Sneakers to Berlin as follows:

| | |
|---|---|
| Equipment | $40,000.00 |
| Fixtures | $40,000.00 |
| Goodwill | $10,000.00 |
| Inventory | $10,000.00 |

1. Debtor and SCE entered two leases. (Pl.'s Ex. 17 & 18). The first lease was signed on December 12, 1995 by Berlin as President of Debtor and individually guaranteed by O'Donnell. On April 24, 1996, a second lease was signed by O'Donnell, as Vice–President and Secretary of Debtor, and had no guarantor.

2. Patricia C. Luten, who works in property management accounting and handles receivables for Sleiman Enterprises, owner of SCE, testified that charges to Debtor were written off by SCE. Mrs. Luten said the reasons for writing off this debt was that every check that Debtor gave to SCE for the ten months preceding the sale to Sneakers had bounced. She said SCE had incurred numerous charges due to Debtor's insufficient funds. She testified that Berlin told her O'Donnell was in South Florida and had filed his own bankruptcy case. Mrs. Luten claimed that SCE did not file a proof of claim in this case nor try to collect back rent for the reason that Debtor had nothing to collect.

3. On November 6, 1997, Debtor owed SCE $89,915.47. (Pl.'s Ex. 20.) This debt consisted of $57,151.68 in past due rent, $9,772.11 for 1996 tangible personal property taxes, and $7,565.78 for 1997 tangible personal property taxes. Credited against this amount was Debtor's deposit in the amount of $9,242.59.

4. Paragraph 1 of this letter provided that Pratt would pay Berlin $140,000.00 for all the assets, tangible and intangible, connected with Debtor. Pratt would also pay for the assessed value of inventory up to $10,000.00. Paragraph 2 set out that Berlin would retain all debts and obligations that Debtor accrued prior to settlement.

5. Schedule B is an eleven page long list of Debtor's leased assets, which included restaurant hardware, video equipment including over thirty televisions, computer equipment, video games, and a pool table. In a separate transaction Sneakers purchased all of these previously leased assets from SCE.

## C. Sneakers' Agreement with SCE

On November 11, 1997, SCE and Sneakers agreed to certain lease terms, including a $50,000.00 payment for equipment and other property. (Pl.'s Ex. 5.) However, the final negotiated Bill of Sale between SCE and Sneakers was for a purchase price of $100,000.00, rather than $50,000.00.[6] Additionally, SCE entered into a lease agreement with Sneakers and Pratt, as an individual guarantor. (Pl.'s Ex. 13.) Sneakers and SCE entered into this lease independent of the Bill of Sale, which only governed the purchase of SCE's assets. The lease specifically noted a pending status of SCE's inventory of landlord's tangible and personal property. Initial negotiations between SCE and Pratt did not include all of the assets and personal property that SCE owned. However, the final Bill of Sale included substantially more assets than originally contemplated by SCE and Sneakers.

Pratt testified that he and SCE negotiated the lease that Sneakers would operate under. Trustee contends that $50,000.00 of payments made by Sneakers was done on Debtor's behalf and that such payment constitutes a preference. Pratt testified that this $50,000.00 payment to SCE was not connected to the purchase of Debtor's assets. Rather its sole purpose was consideration for the purchase of assets from SCE. Pratt testified that the $50,000.00 payment in question, which was made to the landlord, was never to go to Berlin. This payment was part of the consideration for the purchase of assets from SCE. These were the same assets that Debtor previously leased from SCE. Pratt paid all of the money in each transaction directly from his own funds. None of the money paid to SCE was ever possessed or controlled by Berlin or Debtor. SCE never demanded that Pratt pay any past due rent. Rather, SCE and Pratt conducted their own negotiations. Additionally, Paragraph 8(f) of the agreement between Debtor and Pratt does not provide that the $50,000.00 payment was to be used for back rent owed by Debtor.

Debtor filed a voluntary petition under Chapter 7 on February 13, 1998. Trustee's Complaint to Recover Preferential Transfer (Doc. 1) filed on April 1, 1998 alleges that Sneakers paid SCE approximately $80,000.00 in funds otherwise payable to Debtor on account of Debtor's past due rent obligations to SCE. Trustee claims this payment was made within ninety days of Debtor's petition being filed on account of an antecedent debt owed by Debtor to SCE during a period Debtor was insolvent. Trustee claims this payment allowed SCE to receive more than it would in a Chapter 7 liquidation of Debtor's assets had Sneakers not made this payment to SCE. For these reasons, Trustee seeks to have the Court set aside this payment as an avoidable transfer under 11 U.S.C. § 547(b). SCE denies Trustee's claims and allegations.

## CONCLUSIONS OF LAW

■ To recover transfers as preferential under 11 U.S.C. § 547(b), the Trustee must prove that the transfers: 1) were of an interest of the debtor in property; 2) were on account of an antecedent debt; 3) were to or for the benefit of a creditor; 4) were made while the debtor was insolvent; 5) were made within ninety (90) days prior to the commencement of this bankruptcy case; and 6) enabled SCE to receive more than it would have received if the transfers had not been made and SCE had asserted its claim in a Chapter 7 liquidation. *Feltman v. Board of County Comm'rs of Metro Dade County (In re S.E.L. Maduro (Florida), Inc.)*, 205 B.R. 987, 990 (Bankr.S.D.Fla.1997).

The Court initially addresses whether the transfers made by Sneakers to SCE were of an interest of the debtor in property. The Supreme Court addressed this issue in *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). The Court stated:

Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property. Section 547(b) fur-

---

6. The initial lease agreement between SCE and Sneakers excluded walk-ins, bars, HVAC systems, hoods/fire suppression and other built in fixtures or equipment. (Pl.'s Ex. 5.) The actual Bill of Sale included these items. (Pl.'s Ex. 10.)

thers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy. This mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy. Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated. The reach of § 547(b)'s avoidance power is therefore limited to transfers of "property of the debtor."

The Bankruptcy Code does not define "property of the debtor." Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors—"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. For guidance, then, we must turn to § 541, which delineates the scope of "property of the estate" and serves as the postpetition analog to § 547(b)'s "property of the debtor."

496 U.S. at 58–59, 110 S.Ct. 2258 (citations omitted) (footnote omitted). Section 541(a)(1) provides that the "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

The Court in *Feltman* discussed the issue of whether certain transfers by a purchaser of debtor's assets to a creditor were "interests of the debtor in property". 205 B.R. at 991. The Court, looking to the issue of control, noted that the debtor never actually controlled any of the funds at issue. *Id.* However, the third party did not transfer funds simply to pay designated creditors or, as in this case, in consideration of goods purchased from a party other than the Debtor. Rather, funds were transferred as consideration for the third party's acquisition of the debtor's assets. The debtor and the third party had entered an asset purchase agreement where the third party was to de-posit money in an escrow account that later was to be transferred to cover certain obligations of the debtor. *Id.* at 989. In *Feltman* there was a direct link throughout the entire asset sale between the debtor, the third party, and the creditors. The debtor's control was established when it agreed to sell assets to the third party in exchange for the third party's transfers to certain named creditors. *Id.* at 991.

The *Feltman* Court noted that:

[A]voiding preferential transfers received indirectly from the buyer of a debtor's assets is not a novel concept. Other courts have reached the same result where those transfers are for the benefit of the debtor or result in diminution of the debtor's estate. *See Buckley v. Jeld–Wen (In re Interior Woods Prods. Co.)*, 986 F.2d 228 (8th Cir.1993); *See also Taunt v. Fidelity Bank (In re Royal Golf Prods. Corp.)*, 908 F.2d 91, 94 (6th Cir.1990) (third party payments are voidable to the extent that the debtor pledged its property as security for these payments and thus depleted its estate); *Sommers v. Burton (In re Conard Corporation)*, 806 F.2d 610 (5th Cir.1986) (assumption of debt by purchaser as part of sales price constituted avoidable transfer).

205 B.R. at 991.

Judge Paskay discussed whether rent payments made by the principals of a debtor to the debtor's landlord constituted avoidable preferences. *Sport Stations, Inc. v. Naples Partnership, (In re Sport Stations, Inc.)*, 152 B.R. 335 (Bankr.M.D.Fla.1993). Judge Paskay stated that "[W]hen a payment is made by a nondebtor third party to a creditor it cannot be preferential because the funds used to pay the debt are not property of the estate and, thus, the amount of funds available for distribution to other creditors is not reduced." *Id.* at 337. The Court determined that payments made to the debtor's landlord by the principals from the principals' own funds were not property of the estate and did not diminish funds available for distribution to creditors. *Id.* The Court held that the debtor had no viable claim of preference against the landlord to avoid the payments made by the principals. *Id.*

The Trustee has the burden of establishing that the property transferred was property in which Debtor had an interest. *Id.* The Bankruptcy Code requires the trustee to establish by a fair preponderance of the evidence that there was a transfer of an interest of the debtor in property. *Tolz v. Barnett Bank (In re Safe–T–Brake, Inc.),* 162 B.R. 359, 362–363 (Bankr.S.D.Fla.1993). *See also Brown v. First Nat'l Bank of Little Rock, Ark.,* 748 F.2d 490, 491 (8th Cir.1984).

In this case, Trustee is attempting to characterize a payment of $50,000.00 from Sneakers to SCE as being on behalf of Debtor. Additionally, Trustee makes a separate preference claim on personal property taxes paid by Sneakers. However, the preponderance of the evidence before the Court does not support Trustee's position. Trustee claims that Debtor had both legal and equitable interest in the $50,000.00 transfer to SCE under the agreement between Sneakers and Debtor. However, the evidence presented suggests the independence of the transactions that occurred. First, Sneakers purchased all of Debtor's assets for which Debtor received $90,000.00 plus $10,000.00 for inventory. Second, Sneakers and SCE negotiated the purchase price of certain assets and the terms of a lease agreement. None of the funds paid by Sneakers to SCE belonged to Debtor. Additionally, Debtor never controlled these funds. Pratt negotiated on behalf of Sneakers with SCE to work out the best deal he could for his corporation. Debtor was not involved in nor had any impact on these negotiations.

The Ninth Circuit found that a pre-petition payment made by the purchaser of the debtors' assets to a creditor was an avoidable preference. *Mordy v. Chemcarb, Inc. (In re Food Catering & Housing, Inc.),* 971 F.2d 396 (9th Cir.1992). In that case, the debtor sold substantially all of the assets of the business to a third party, just as in this case. However, the creditor in that case admitted that payments received from the purchaser were received within ninety days of the debtor's filing and were for antecedent debts. *Id.* at 397. The Court noted that payment of a debtor's antecedent debts are transfers "to or for the benefit of a creditor" under Section 547(b). *Id.* at 398. SCE claims that payments received from Sneakers were not on account of an antecedent debt owed by Debtor. The Court agrees. The evidence presented shows that the equipment Sneakers purchased from SCE had value in excess of the $100,000.00 paid. Trustee presented no evidence refuting this testimony. SCE had basically given up on collecting any money from Debtor after Debtor had repeatedly bounced checks and failed to meet promises. Berlin had told SCE for months that he had money coming in from investors. This was never true.

Berlin did bring Pratt to the table. However, no consideration outside of what Sneakers paid directly to Debtor for its assets, including its goodwill, was paid to Debtor, Berlin, or to SCE on behalf of Debtor. Pratt negotiated with SCE to benefit Sneakers. Pratt's concerns were with the operation of his corporation. And in completely separate transactions, Sneakers paid Debtor for Debtor's assets and then paid SCE for SCE's assets.

Trustee also claims funds used to pay personal property taxes constitute an avoidable preference. Again the preponderance of the evidence does not support Trustee's position. While Debtor was initially responsible to pay taxes on the property leased from SCE under Debtor's lease with SCE, when Debtor failed to meet this obligation under the lease, SCE became responsible for these taxes. Additionally, when Sneakers purchased assets from Debtor, taxes associated with those assets became the responsibility of the new owner, Sneakers, and were no longer an obligation of Debtor. Unpaid personal property taxes created a lien on the assets Sneakers purchased from SCE and from Debtor. The Court notes that Debtor was previously obligated to SCE for taxes on leased assets under the lease but had no obligation to the Department of Revenue. Rather, Sneakers assumed all existing tax liability when it purchased assets with taxes being owed on those assets. When Sneakers paid taxes owed on assets it purchased, that payment only benefited Sneakers, not Debtor.

Trustee attempts to fractionalize the amount of taxes owed on property previously owned by SCE and property previously owned by Debtor. (Doc. 34.) This attempt is done based on an evidentiary record void of exact values of the assets involved. Further, Debtor sold the personal property to Sneakers and now claims taxes paid on that property constitutes a preference payment.[7] Additionally, Pratt testified that the 1997 personal property tax bill was not due until after Sneakers purchased Debtor's assets and SCE never credited Debtor's account for Sneakers' payment of those taxes. Again, the preponderance of the evidence before the Court does not support the Trustee's position that the taxes paid constitute a preference.

### CONCLUSION

Trustee claims that the additional $50,-000.00 paid under the actual bill of sale was done due to SCE's concern for a possible preference action. However, the evidence shows that the value of equipment purchased by Sneakers from SCE under the bill of sale far exceeded the actual purchase price of $100,000.00. Trustee presented no evidence contradicting the value of what Sneakers purchased. Rather, Trustee relied on the initial lease agreement to support his accusation that the additional $50,000.00 payment to SCE was made on behalf of Debtor. The evidence does not support Trustee's preference claims on any of the payments made by Sneakers to SCE.

The Court finds that Debtor did not have legal or equitable interests in the payments made by Sneakers to SCE as of the commencement of the case. Having determined that these transfers were not of an interest of the debtor in property, the Court will not fully address other elements required for an avoidable preference. However, the Court finds that the evidence presented and relied upon in reaching this decision does not support Trustee's claim that payment was made on account of an antecedent debt.

7. Debtor represented to Sneakers in their agreement that the 1996 and 1997 taxes would be paid out of the $100,000.00 purchase price that Sneakers paid to Debtor. (Doc. 34.) Trustee's evidentiary use of this agreement is somewhat hypocritical. In one sense Trustee characterizes

A Separate order will be entered in accordance with the foregoing.

Debtor's agreement with Sneakers as proof that the $50,000.00 payment in question was a preference. However, Trustee does not stress that the same agreement provides Debtor's responsibility to make tax payments from money paid to Debtor by Sneakers.