**In re Robert J. FOX, Debtor.**

**John J. Hunter, Trustee, Plaintiff,**

**v.**

**KeyBank National Assoc., et al., Defendants.**

**Nos. 00–3086, 99–31663.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 5, 2001.

John J. Hunter, Toledo, OH, pro se.

Mark R. Tantari, Toledo, OH, for defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Plaintiff's Motion for Summary Judgment, Memorandum in Support, and Response to the Defendant's Motion for Summary Judgment; and the Defendant's Motion for Summary Judgment, Memorandum in Support, and Response to the Plaintiff's Motion for Summary Judgment.

This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment should be Denied; and that the Defendant's Motion for Summary Judgment should be Granted.

## FACTS

The Debtor, Robert J. Fox, (hereinafter referred to as the "Debtor"), and his son, Matthew Fox, who has also sought bankruptcy relief, were officers and shareholders in the now dissolved corporation known as Clarmatic Industries. Prior to its dissolution in 1999, KeyBank National Association, the Defendant in this action, (hereinafter referred to as the "Defendant"), extended to Clarmatic Industries three commercial loans in the amounts of Thirty Thousand dollars ($30,000.00), Fifty Thousand dollars ($50,000.00), and One Hundred Fifty Thousand dollars ($150,-000.00); the respective dates of these loans were September 10, 1996, June 26, 1997, and January 12, 1998. As security for the loans, the Debtor, in addition to pledging his personal assets, pledged as security all the business assets of Clarmatic Industries. Thereafter, the Defendant perfected its security interest in these assets by filing a financing statement in accordance with Ohio law.

During the time the Debtor was acquiring the above loans from the Defendant, the Debtor, along with his son, also took a personal loan from the assets of Clarmatic Industries. The Debtor and his son then used these funds to purchase certain items of jewelry. Thereafter, in early 1998, the Debtor contends that in satisfaction of his debt to Clarmatic Industries, he and his son transferred all of the jewelry to the Company. Specifically, in an affidavit to the Court, the Debtor stated:

[i]n early 1998, all of the Jewelry was transferred to the Company and was accepted by the Company in satisfaction of the loans which the Company had extended to this Affiant and Matthew Fox. Following this transfer, the jewelry became the assets and property of the Company.

No direct documentation of this transfer, however, exists. Nonetheless, in supposed recognition of this transfer, Clarmatic Industries, on June 30, 1998, listed on its 'financial balance statement,' a business investment asset of Fifty-two Thousand Four Hundred Eighty-five dollars ($52,-485.00), the amount of which represented the exact appraisal value of the jewelry.

In December of 1998, Clarmatic Industries, after experiencing some financial difficulties, defaulted on its loan obligations with the Defendant. As a consequence, on February 9th of 1999, Clarmatic Industries, upon demand by the Defendant, surrendered all of its assets to the Defendant. Specifically included within the assets surrendered to the Defendant was the jewelry purchased by the Debtor and the Debtor's son. Thereafter, the Defendant, in supposed compliance with its security agreement, solicited offers for the jewelry, eventually accepting an offer for the jewelry of Eight Thousand dollars ($8,000.00)

On April 23, 1999, the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. Appointed as the trustee for the Debtor's bankruptcy case was the Plaintiff, John Hunter (hereinafter referred to as the "Trustee"), who claims that the jewelry sold by the Defendant, in actuality, belonged not to Clarmatic Industries, but rather to the Debtor and the Debtor's son. Accordingly, the Trustee contends that with ownership of the jewelry being in the hands of the Debtor and

the Debtor's son, the prepetition transfer of the jewelry to the Bank, being within Ninety (90) days of the filing of the Debtor's bankruptcy petition, constituted a preference under 11 U.S.C. § 547. In the alternative, the Trustee asserts that the transfer of the jewelry was fraudulent for purposes of 11 U.S.C. § 548. In opposition to these arguments, the Defendant maintains that when it received the jewelry, the Debtor (and the Debtor's son) has no ownership interest therein, and thus the Trustee has no authority to avoid the transfer of the jewelry under either § 547 and § 548.

## LAW

### Section 547. Preferences

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

### Section 548. Fraudulent Transfers and Obligations

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

## DISCUSSION

Proceedings to determine, avoid, or recover a preference, as well as a fraudulent conveyance, are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F)/(H). Thus, this case is a core proceeding.

▬ The instant case is brought before the Court by way of the Parties' cross-motions for summary judgment. The standard for a summary judgment motion, as set forth under the Federal Rules of Civil Procedure, and which is made applicable to this proceeding by Bankruptcy Rule 7056, provides that a party will prevail on a motion for summary judgment when, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).

In order to prevail, the movant must demonstrate all the elements of the cause of action; but once that burden is established, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir. 1975); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *See also In re Bell,* 181 B.R. 311 (Bankr.N.D.Ohio 1995). In addition, in cases such as this, where the Parties have filed cross-motions for summary judgment, the Court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden to establish the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. Thus, the fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Fed.R.Civ.P. 56 does not automatically entitle the opposing party to summary judgment. Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 10A Federal Practice and Procedure § 2720, at 16–17 (1983). However, it should be noted that in the cross-motion context, a lighter burden is imposed upon the party who does not face the burden of proof at trial, because it need only point to the insufficiency of the evidence to prevail on a summary judgment motion as opposed to having to establish that all the elements of its cause of action are met. *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987) *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

As stated in this Court's recitation of facts, the Trustee seeks to recover the jewelry that the Debtor, just prior to his bankruptcy filing, turned over to the Defendant. The statutory authorities upon which the Trustee relies for his cause of action are sections 547 and 548 of the Bankruptcy Code, which permit, if certain conditions are met, a bankruptcy trustee to avoid a prepetition transfer of property for the benefit of a debtor's bankruptcy estate. An element common to both of these sections, and for which the Parties disagree as to its applicability, is that in order for a bankruptcy trustee to avoid a transfer as either a preference under § 547 or fraudulent conveyance under § 548, a debtor must have had, at the time the transfer was accomplished, an ownership interest in the property transferred. Specifically, both §§ 547 and 548 provide that only "an interest of the debtor in property" may be avoided thereunder.

In support of his compliance with this requirement, the Trustee called this Court's attention to the fact that appraisals of the jewelry—which were undertaken for insurance purposes—were conducted in the name of the Debtor's son. However more importantly, in terms of showing the Debtor's ownership interest in the jewelry, the Trustee points out that both the Debtor and the Debtor's son carried the jewelry as riders on their personal policies of insurance, with said riders not being eliminated until after the Defendant had taken possession of the jewelry. The Defendant, while not contesting this fact, asserts that since early 1998 ownership of the jewelry was clearly in the hands of Clarmatic Industries. As support for this position, the Defendant called this Court's attention to the fact that, through affidavits, both the Debtor and a representative of the Bank

have clearly stated that ownership of the jewelry was transferred to Clarmatic Industries in early 1998. In addition, the Defendant points out that on June 30, 1998, Clarmatic Industries, in recognition of it sole ownership interest in the jewelry, listed on its 'financial balance statement' a business investment asset of Fifty-two Thousand Four Hundred Eighty-five ($52,485.00) dollars, with said value being the exact appraisal value of the jewelry.

■ For purposes of § 547 and § 548, the bankruptcy trustee carries the burden of establishing that a debtor has an interest in property. *Crews v. Shopping Center Equities, Inc. (In re Sneakers Sports Grill, Inc.)*, 228 B.R. 795, 800 (Bankr. M.D.Fla.1999). As for what constitutes "an interest of the debtor in property," the Supreme Court of the United States has held that this phrase is akin to the broad statutory definition of "property of the estate" provided for in 11 U.S.C. § 541(a). *Begier v. Internal Revenue Service* 496 U.S. 53, 58–59, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990). As explained by the Supreme Court:

> The Bankruptcy Code does not define 'property of the debtor.' Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors— 'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. For guidance, then, we must turn to § 541, which delineates the scope of 'property of the estate' and serves as the postpetition analog to § 547(b)'s 'property of the debtor.'

*Id.* at 59, 110 S.Ct. at 2263.

■ Section 541(a) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." For purposes of this section, an interest in property is determined by reference to state law. *In re Greer*, 242 B.R. 389, 394 (Bankr.N.D.Ohio 1999); *Yoppolo v. Trombley (In re DeVincent)*, 238 B.R. 722, 725 (Bankr.N.D.Ohio 1999); *see also Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.)*, 220 B.R. 1005, 1013 (10th Cir. BAP 1998) (holding that whether a debtor has interest in property, for preference avoidance purposes, is determined under state law). Under Ohio law, which is applicable in this case since all the events giving rise to this proceeding occurred in Ohio, traditional indicia of ownership are generally used to determine whether a person has an ownership interest in property. Such traditional indicia mainly include: possession, and who bears the risk of loss. *Peoples Savings Bank & Trust Co. v. Jos. Joseph Brothers Co.*, 16 Ohio App. 45, 48 (1921) (the rule is that possession of personal property must be delivered actually or symbolically before title passes); 42 Ohio Jur.3d *Evidence & Witnesses* § 168. *see also Tahoe Corp. v. P & G Gathering Systems, Inc.*, 506 So.2d 1336 (La.App. 2nd Cir.1987) (possession and risk are classic indicia of ownership).

■ In cases such as this, however, where a closely-held corporation is involved and the other person with a possible ownership interest in the property is both a shareholder and an officer of the corporation, such traditional indicia of ownership are not extremely helpful as the distinction between the two entities has become blurred. For example, while the "possession" indicia may be very helpful to determine the ownership of a chattel as between two parties dealing at arms-length, possession does not necessarily reveal who owns a chattel as between an

individual shareholder/officer of a corporation and the corporation itself. To see why, one need only envision the very common situation today where an individual operates a closely-held corporation out of their home. Along this same line, and in contrast to the Trustee's argument, in a closely-held corporation, the entity insured for the risk of loss will not necessarily be dispositive of the ownership interest therein as it is entirely plausible that a shareholder/officer of a closely-held corporation would, out of his or her own personal assets, insure a corporate asset. Accordingly, in a situation such as this where the traditional indicia of ownership are not dispositive as to the issue of ownership, Ohio law provides that any evidence which is not otherwise inadmissible and which bears on the relevancy of a person's ownership interest in an item of property may be used to show an ownership interest in the property. 42 Ohio Jur.3d *Evidence & Witnesses* § 193. In this regard, the following factors point toward Clarmatic Industries being the sole owner of the jewelry since 1998:

—An affidavit of the Debtor stating that in early 1998 he transferred ownership of the jewelry to Clarmatic Industries;

—an affidavit from a representative of the Defendant it which it is stated the Debtor (and his son) transferred ownership of the jewelry to Clarmatic Industries in 1998;

—a balance Sheet of Clarmatic Industries taken on June 30, 1998, which shows that the Company had over Fifty-two Thousand Four Hundred Eight-five dollars ($52,485.00) in investment assets, with this figure being the exact appraisal value of the jewelry.

On the other hand, the following evidence points to the Debtor (and his son) having maintained an ownership interest in the jewelry at the time the jewelry was transferred to the Defendant:

—The jewelry was originally the property of the Debtor and the Debtor's son, and no direct documents have been presented which account for the transfer of the jewelry to Clarmatic Industries;

—the Jewelry was insured in the name of the Debtor and the Debtor's son until approximately the time the Jewelry was turned over to the Bank.

After carefully weighing these factors against each other, the Court finds that the greater weight of the evidence leans toward a finding that, since early 1998, the jewelry at issue in this case was owned by Clarmatic Industries, and not the Debtor. In coming to this conclusion, the Court, although declining to give much weight to the affidavit submitted by the Defendant's representative, is persuaded that the Debtor's affidavit—which states that the jewelry was in early 1998 transferred to Clarmatic Industries—outweighs the Trustee's evidence in opposition. In making this finding, it was observed that no matter what the Court's decision in this case, the Debtor is no way entitled to the jewelry or the proceeds therefrom, and thus in contrast to the statement submitted by the Defendant's representative, the Debtor's statement cannot be considered as self-serving. Simply stated, the Court finds the Debtor's statement credible as to the Debtor's intent to transfer, in early 1998, possession of the jewelry to Clarmatic Industries. Further supporting the credibility of the Debtor's statement is the fact that the statement is corroborated by the 1998 financial balance sheet of Clarmatic Industries which shows that the jewelry was a financial asset of the Company. Thus to reiterate, the Court, given the degree of credibility it attaches to the Debtor's affidavit testimony, is not persuaded that the Debtor, at the time the

jewelry was transferred to the Defendant, retained an ownership interest therein; this, despite the fact that the Debtor continued to insure the jewelry after the undocumented transfer of the jewelry to Clarmatic Industries took place.

In conclusion, it is the decision of the Court that Clarmatic Industries, and not the Debtor, owned in early 1998 the jewelry in question. As a consequence, the Trustee cannot satisfy his burden of showing that the Debtor had "an interest" in the jewelry as is required to sustain the Trustee's cause of action under either § 547 or § 548 of the Bankruptcy Code. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Plaintiff–Trustee, John J. Hunter, be, and is hereby, DENIED; and that the Motion for Summary Judgment submitted by the Defendant, KeyBank National Association, be, and is hereby, GRANTED.