**Mark A. WARSCO, Trustee, Plaintiff,**

v.

**PREFERRED TECHNICAL GROUP, INC., Defendant.**

Civ. No. 1:00CV10.

United States District Court, N.D. Indiana, Fort Wayne Division.

Aug. 17, 2000.

**460**

Cassandra L. Writz, Rothberg, Logan & Warsco, LLP, Fort Wayne, IN, for Mark A. Warsco.

Howard B. Sandler, Edward J. Ormsby, Beckman, Lawson, Sandler, Snyder and Federoff, Fort Wayne, IN, W. David Arnold, Nathan and Roberts, Toledo, OH, for Preferred Technical Group Inc.

## *ORDER*

LEE, Chief Judge.

This matter is before the court on cross motions for summary judgment, both of which were filed on June 19, 2000. The plaintiff, Mark A. Warsco, Trustee ("Trustee"), filed his response to the defendant's motion on August 2, 2000. The defendant, Preferred Technical Group, Inc. ("PTG"), filed its response to the Trustee's motion on August 3, 2000. The parties determined that replies were not necessary and, thus, the cross motions are now ripe for review.

For the reasons which follow, the Trustee's motion for summary judgment will be denied, and PTG's motion for summary judgment will be granted.

### *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which

demonstrate the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. 2505. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

The Trustee initiated the present action to recover a preferential transfer from PTG, pursuant to 11 U.S.C. § 547. The issue, as framed by the Trustee, is whether the Trustee may recover a payment made to PTG, an unsecured creditor of Presidential, Ltd. ("Debtor"), by Presidential Holdings, LLC ("LLC") in the context of an asset purchase transaction whereby LLC acquired substantially all of the Debtor's assets.

The Debtor became indebted to PTG in April of 1998, when the Debtor purchased certain assets from PTG, and executed a Subordinated Promissory Note for $2 million. This obligation was unsecured. On May 5, 1999, the Debtor entered into an agreement with LLC whereby LLC purchased substantially all of the Debtor's assets. As a condition to purchasing the Debtor's assets, LLC purchased PTG's Note for $500,000. LLC then used the

Note to leverage the purchase of assets from the Debtor. LLC agreed to reduce the outstanding principal amount of the Note from $1.75 million to $1 million, and use forgiveness of indebtedness in the amount of $750,000 as a portion of the purchase price. This agreement is memorialized in a Note Reduction and Forbearance Agreement, also dated May 5, 1999. On May 28, 1999, an involuntary petition under Chapter 7 of the United States Bankruptcy Code was filed against the Debtor.

The Trustee asserts that the $500,000 transfer should be avoided because PTG was the only unsecured creditor of the Debtor to receive payment in connection with the sale of the Debtor's assets and thus the result of the transfer was to permit PTG to receive more than it would have received as a distribution under the Chapter 7 case had the transfer not been made.

█ There are six statutory elements that the Trustee must prove to avoid the purchase price of the Note as a preferential transfer. Each element must be proven by a preponderance of the evidence. *In re Chicago, M. & W.R. Co.*, 127 B.R. 839, 842 (Bankr.N.D.Ill.1991). First, the transfer must be a "transfer of an interest of the debtor in property." 11 U.S.C. § 547(b). Second, the transfer must be "to or for the benefit of PTG". 11 U.S.C. § 547(b)(1). Third, the transfer must be "for or on account of an antecedent debt owed by the debtor." 11 U.S.C. § 47(b)(2). Fourth, the transfer must have been "made while the debtor was insolvent." 11 U.S.C. § 547(b)(3). Fifth, the transfer must have been made "on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4). Lastly, the transfer must enable PTG to receive more than it would if (1) the case were a case under Chapter 7 of Title 11; (2) the transfer had not been made; and (3) PTG received payment of such debt to the extent provided by the provisions of Title 11. 11 U.S.C. § 547(b)(5). The dis-

puted issues in this case are the first and third elements: whether the $500,000 transfer was a transfer of an interest of the Debtor, and whether the transfer was for or on account of an antecedent debt owed by the Debtor.

PTG first argues that the transfer at issue here was not a "transfer of an interest of the debtor in property" because the transfer did not diminish the Debtor's bankruptcy estate. PTG contends that the transfer was a payment from LLC to PTG in exchange for the Note; thus no money came from the Debtor, and the Debtor's estate was not diminished. According to PTG, the only effect of the purchase of the Note by LLC was that the Debtor's obligations under the Note were now owed to LLC instead of PTG.

The Trustee acknowledges that the transfer was between LLC and PTG, but argues that under certain circumstances, a transfer made to a creditor of the debtor by a third party may constitute an avoidable preference. The Trustee argues that the key element is the net effect on the Debtor's estate: did the transfer cause the depletion of the debtor's estate? *See In re T.B. Westex Foods, Inc.*, 950 F.2d 1187, 1194 (5th Cir.1992). In this case, the Trustee argues that the net result of the transaction at issue was that LLC acquired the assets of the Debtor, at the same time that PTG received payment for or on account of its claim when other unsecured creditors received nothing. The Trustee points out that the Note Purchase Agreement, whereby LLC acquired PTG's claim against the Debtor, was contemporaneously made with and expressly incorporated into the Asset Purchase Agreement. That is, LLC's obligation to buy the Note from PTG was expressly conditioned upon the purchaser acquiring substantially all of the assets of the Debtor. The Trustee argues that the Asset Purchase Agreement and Note Purchase Agreement make it clear that these transactions were structured in such a way so as to enable PTG to receive $500,000 from

the asset sale. The Trustee notes that the purpose of preference avoidance is frustrated when a debtor's assets are used, directly or indirectly, to favor some creditors over others, during the preference period.

The Trustee relies primarily on two cases in support of its position that an indirect transfer of a debtor's property is an avoidable preferential transfer. In *Interior Wood Products Co., Inc.*, 986 F.2d 228 (8th Cir.1993), the Chapter 7 trustee brought an adversary proceeding against an unsecured creditor, alleging that the buyer's prepetition payment of the debtor's debt to unsecured creditors as part of the buyer's acquisition of the debtor's assets was an avoidable preference. The creditor, however, argued that there was no diminution of the debtor's estate because the payment was not made at the direction of debtor or from funds under the control of the debtor. However, the Eighth Circuit Court of Appeals held:

> It is irrelevant whether Jeld–Wen was paid directly by Interior Wood or indirectly by Jordan because the transfer was of Interior Wood's property. The fact that the payment went through Interior Wood's attorney, who acted as an escrow agent for the unsecured creditors, does not refute the fact that the payment was made from Interior Wood's property and thus implicitly diminished the bankruptcy estate. A transfer of the debtor's property is not immune from recovery as a voidable preference merely because it was not transferred directly by the debtor, but through an escrow account.

986 F.2d at 231. The Trustee argues that the same result was obtained in this case because the $500,000 paid to PTG represents a portion of the purchase price by LLC to acquire the assets of the Debtor, just as if LLC had paid the $500,000 directly to the Debtor and the Debtor then used those funds to pay PTG. The other case relied on by the Trustee is *In re S.E.L. Maduro*, 205 B.R. 987 (Bankr.

S.D.Fla.1997), wherein a Chapter 7 trustee sought to avoid payments made to a creditor from sale proceeds deposited into an escrow account by the purchaser of the debtor's assets. The Bankruptcy Court, relying heavily on *Interior Wood*, held that the funds in the escrow account represented the purchase price and could be treated as property of the debtor's estate even if the debtor never had actual control of the funds. 205 B.R. at 992.

PTG distinguishes these cases by noting that those cases, unlike the case at bar, involved asset purchase agreements that expressly allocated a portion of the purchase price for the debtor's assets to pay the unsecured creditor. PTG strongly contends that the $500,000 paid for the Note was not part of the asset purchase, nor did it reduce the consideration provided to the Debtor for its assets. PTG points out that the Note Purchase Agreement does not indicate that it is related to the purchase price for the Debtor's assets and does not even mention the purchase price for the Debtor's assets. PTG further notes that the Asset Purchase Agreement specifically defines the purchase price and no reference is made to the purchase of the Note or the Note purchase price:

> **Purchase Price.** The purchase price for the Purchased Assets will be (i) $3,425,000.00, plus (ii) the Post Closing Payment (as determined and adjusted in accordance with Section 1.8), plus (iii) the book value of the Assumed Liabilities (collectively, the "Purchase Price"), plus (iv) $750,000.00 in principal amount of indebtedness to be forgiven by Buyer under the Subordinated Promissory Note executed April 21, 1998, made by Seller in favor of Preferred Technical Group, Inc. in the original principal amount of $2 million (the "PTG Note") in accordance with Section 8.3(g). The Purchase Price will be adjusted in accordance with Section 1.9.

Rau Aff., Attachment 2, ¶ 1.6.

PTG has also submitted evidence, in the form of the affidavit of Hans Rau, the

president and majority owner of LLC. Rau states that "[t]he $500,000.00 note purchase price that LLC paid to PTG was not, and was not intended to be, part of the purchase price for the Debtor's assets." Rau Aff. at ¶ 12. PTG claims that if LLC had not purchased the Note, the Debtor would not have received the purchase price of the Note ($500,000) or any other amount, because LLC would not have purchased the Debtor's assets. PTG contends that there was not an "indirect transfer" by the Debtor, because there is no showing that anything left the Debtor's estate. PTG again states that LLC simply purchased the Note and the Debtor still owed the same obligation, but to LLC instead of PTG.

The Trustee has countered with the argument that PTG's insistence that LLC would not have consummated the purchase agreement without having acquired the Note only emphasizes how the Note Purchase and Asset Purchase transactions were component parts of a single integrated transaction. That is, the $500,000 payment to PTG, while not expressly designated as part of the purchase price, was part of the transaction cost of LLC's acquisition of the Debtor's assets. The terms of the Note Purchase Agreement clearly conditioned LLC's obligation to purchase PTG's Note upon LLC's acquisition of the Debtor's assets. Thus, the Trustee claims that there were not two separate and independent transactions.

■ This court finds that PTG has the better argument on this issue. The critical question, as the parties agree, is whether the Debtor's estate was depleted by the transactions. Although the Trustee assumes that LLC would have paid the $500,000 to the Debtor if it had not purchased the Note, there is simply no evidence supporting this assumption. In fact, Rau states in his affidavit that "if LLC was unable to purchase the Note from PTG, LLC would not have purchased the Debtor's assets."[1] As the *Maduro* court

specifically noted, "preference liability will be strictly imposed on creditors who receive preferential treatment as part of a purchase transaction where it is *clear* that the money they are receiving is money that was part of the purchase price." 205 B.R. at 993 (emphasis added). In the present case it is far from clear that the money PTG received was part of the purchase price of the Debtor's assets. Accordingly, the court concludes that the Trustee has not shown that the transfer was an "interest of the debtor in property". As the Trustee must meet all six of the elements listed in § 547(b), summary judgment may be granted in favor of PTG on this basis alone.

■ Nevertheless, the court will now address the remaining issue raised by PTG concerning whether the amount paid for the Note was "for or on account of an antecedent debt". The Trustee has taken the position that it is clear that the Debtor's obligation to PTG arose in April 1998, when the Debtor signed the Subordinated Promissory Note, for the original principal sum of $2 million, and thus it is clear that the debt was antecedent to the transfer. The real issue is whether the $500,000 payment was "for" that antecedent debt. PTG argues that the $500,000 paid by LLC to PTG was not applied to reduce the amount owed by the Debtor on the Note, and thus payment was not "for" the antecedent debt. PTG again claims that the only difference for the Debtor was that the debt was now owed to LLC instead of PTG, and the $500,000 was not used to reduce the amount of the debt. PTG directs the court to I *Ginsberg & Martin on Bankruptcy* § 8.02[D], p–8–13 (4th ed.1999), which states:

> They key is how the creditor applies the payment. If it is applied to reduce an existing claim in whole or in part, then the part so applied is avoidable as a preference, assuming the other elements of a preference are present and no other

1. Rau Aff. at ¶ 20.

exception applies. If, on the other hand, no part of the debtor's payment is applied to reduce the antecedent debt, no preference has taken place.

In response, the Trustee argues that PTG is taking the Note Purchase Agreement out of its context in the Asset Purchase transaction. The Trustee contends that when an acquiring entity, such as LLC, takes an assignment of a creditor's claim against the Debtor, which is wholly contingent upon the acquisition of the Debtor's assets by the acquiring entity, more than a mere substitution of creditors has occurred. The Trustee contends that more than mere substitution occurred because a secured creditor (LLC) was substituted for an unsecured creditor (PTG), and the secured creditor acquired substantially all of the assets of the debtor and, moreover, used the claim it acquired to leverage the asset acquisition. However, the Trustee has failed to explain how LLC is a secured creditor of the Debtor, especially considering the fact that the Debtor is no longer in business and has no assets. As there is no evidence that the $500,000 purchase price for the Note was used as payment on the Note, or as security for the Note, the court finds that the Trustee has failed to show that the transfer was "for or on account of antecedent debt". Therefore, summary judgment in favor of PTG is warranted on this basis also.

### Conclusion

On the basis of the foregoing, PTG's motion for summary judgment is hereby GRANTED, and the Trustee's motion for summary judgment is hereby DENIED.